MARY C. BURNHAM & others *vs.* BEVERLY AIRWAYS, INC., & others.

Essex.     January 5, 1942. — May 29, 1942.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Aircraft. Trespass. Nuisance. Equity Jurisdiction,* Trespass, Aircraft. *Corporation,* Officers and agents. *Equity Pleading and Practice,* Parties.

Discussion by QUA, J., of *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511.

Flights of aircraft to and from a private airport over a nearby dwelling house, garage and the surrounding cultivated land and grounds which were at a height less than the minimum established by the Massachusetts aeronautical commission, were not a nuisance where found not to affect the health, habits or material comfort of a normal person; but they were trespasses which in the circumstances should be enjoined (except when necessary for safe emergency landings) in a suit by the landowner against the proprietor of the airport.

In a suit against a corporation operating a private airport and against its president and treasurer, to enjoin as trespasses certain flights of aircraft to and from the airport over the plaintiff's land, the bill should have been dismissed as to the individual defendants where it did not appear that they participated in or permitted the flights or even knew of them.

BILL IN EQUITY, filed in the Superior Court on July 8, 1940.

The final decree was entered by order of *Broadhurst,* J.

*S. J. Cagan,* (*S. S. Cagan* with him,) for the defendants.

*S. S. Ganz,* (*E. R. Anderson* with him,) for the plaintiffs.

QUA, J. The plaintiffs are the owners of a country estate of approximately one hundred seventy-four acres of land in Wenham, on which are located a commodious dwelling house, a garage, and a water tower. At a distance of over four thousand feet from the main house are other buildings occupied by a caretaker. The buildings last mentioned do not enter into this controversy. The defendant Beverly Airways, Inc., under an arrangement with the city of

Beverly, operates for profit an airport on forty acres of land on which the city has a leasehold. The airport lies contiguous to and southwest of the plaintiffs' estate. The individual defendants are the president and treasurer respectively of the corporate defendant. The plaintiffs sue to enjoin the nuisance and trespasses alleged to result from the maintenance of the airport and the flying of airplanes over the plaintiffs' property, and for damages.

All defendants appeal from a final decree enjoining all from permitting the operation of aircraft over the dwelling house and garage of the plaintiffs and the cultivated land and grounds immediately adjacent thereto and surrounding the same at a height of less than five hundred feet except when necessary for a safe emergency landing, and fixing damages in the sum of $1.

The following additional findings of the master should be here stated: The plaintiffs' dwelling is twenty-eight hundred feet from the nearest boundary of the airport and thirty-five hundred eighty feet from its central point. Adjacent to the plaintiffs' house are a garden, a lawn, and some grass land. Except for the territory immediately surrounding the dwelling house and garage, the plaintiffs' property is undeveloped and uncultivated and covered with dense brush and trees, with some swamp land. From the northeasterly boundary of the airport the plaintiffs' land slopes sharply into marshy territory and then rises to the location of the dwelling house at an altitude sixty feet higher than that of the airport. The chimney of the house is one hundred five feet above the airport. On the airport are a small office building, a shed for the storage of gasoline, and a steel hangar sixty feet square, all erected at a cost of about $4,000. A rotating tower light, with subsidiary lights, is maintained by the aeronautics board of the Federal government. There are no runways or flood lights. The surface is of sod. "A substantial lot of land" to the west, northwest, and southwest of the forty acres has in some manner "become available for the airport's use." The defendant Beverly Airways, Inc., invites aircraft from other localities to its field. It is paid for storing, housing, and

conditioning aircraft. It has owned several airplanes and carries passengers for hire and sells gasoline and other aircraft supplies. About fifty students take instruction at the field, but with no consistent regularity. Army and navy planes occasionally make temporary use of it. Activities there have gradually increased in recent years and will increase further, but it is still "a fairly modest project."

Detailed findings directly bearing upon nuisance and trespass are these: The site of the airport was properly and reasonably selected. It is properly maintained and reasonably conducted. Noises emanating from the field itself do not reach the plaintiffs' dwelling house to cause discomfort. The existence of the airport and all flights of airplanes over the plaintiffs' property have not by noise or otherwise been such as to affect the health, habits, or material comfort of a normal person. Airplanes owned by Beverly Airways, Inc., as well as those owned by others and regularly stored at the airport and "visiting" airplanes, in taking off and in landing, have flown over the plaintiffs' premises at altitudes of less than five hundred feet. When an airplane takes off in the direction of the plaintiffs' premises it necessarily passes over the boundary line at an altitude of less than one hundred feet, which gradually increases, depending upon the power of the plane and atmospheric conditions; but it continues for a "substantial" distance at a height of less than five hundred feet over the wooded and the swampy parts of the plaintiffs' land. In general such flights will occur whenever atmospheric conditions make it necessary or convenient. An airplane owned by Beverly Airways, Inc., two other planes whose owners used the facilities of the airport, and two unidentified planes have, in taking off, passed over the plaintiffs' dwelling house and buildings at altitudes of approximately one hundred fifty feet. The frequency of such flights "is incapable of sound calculation." They have been "modestly frequent" and "are the children of carelessness and not of malevolence." They are unnecessary except in the "remote instance" of the presence of an "air pocket" or "down-

draught" which very rarely exists, but when it does exist compels the pilot taking off in a northeast by north direction to pass over the plaintiffs' house or the contiguous grounds. In that event the "Piper Cub" plane of the Beverly Airways, Inc., would under the most unfavorable conditions clear the house by one hundred feet. Under more favorable conditions a height of five hundred feet might be reached, "during which the plane could be safely deviated." Many modern aircraft could do better. Except for this rare contingency, no one conversant with the airport and adjoining territory need fly at any time at any altitude directly over the plaintiffs' dwelling house or contiguous grounds. The presence of a "down-draught" is not always discernible until the plane is in the air.

Since the plaintiffs have not appealed, we are not concerned with any question as to whether the decree should have protected all of the plaintiffs' premises or should have been in any respect more favorable to the plaintiffs. We are concerned only with the question whether relief was properly granted to the extent of enjoining the defendants from operating or permitting the operation of aircraft over the plaintiffs' dwelling house and garage and the cultivated land and grounds immediately adjacent thereto at a height of less than five hundred feet, and with the allowance of damages of $1.

In view of the finding that the flights of airplanes over the plaintiffs' property have not been such as to affect the health, habits, or material comfort of a normal person it would seem that the decree cannot rest on the ground of nuisance as that term is commonly defined in this Commonwealth. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 488, 489. *Tortorella* v. *H. Traiser & Co. Inc.* 284 Mass. 497, 501. *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, 518. The inquiry remains whether the decree can be supported on the ground that the passage of airplanes over the plaintiffs' land at a height of less than five hundred feet amounted to a continuing trespass of sufficiently serious character to justify relief by injunction.

Almost the first, if not the very first, case in a court of

last resort to deal with the relative rights of the aviator and the landowner was the case of *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, decided by this court in 1930. In so far as is material to the present inquiry we there held (1) that, in general, the statute of this Commonwealth (formerly G. L. c. 90, § 55, inserted by St. 1922, c. 534, § 1), fixing a minimum altitude for the operation of aircraft over buildings or persons outside of thickly settled or business districts of not less than five hundred feet, and the regulations of the Secretary of Commerce made in pursuance of statutes of the United States and fixing the same minimum altitude for operation in interstate commerce were more than mere prohibitions upon the aviator and were in effect valid regulations, permissible under the police power, of the property rights of the landowner, establishing as against the latter the right of harmless flight at the required altitude over his land through space unoccupied by him (see 270 Mass. 511 at pages 518–526); (2) that exceptions in the statute permitting flying at lower altitudes while taking off and landing were not intended as legislative limitations upon the rights of land owners in the air space, since otherwise "they might authorize flight so near the surface of the land as to constitute unquestionable interference with the rights of the landowner," and that provision was made for landing places in other sections of the statutes (pages 526, 527); (3) that flights below five hundred feet, including those made in taking off or landing, might amount to trespass against the right of the landowner (pages 528–531. The opinion does not assert that every flight below the level of the five hundred feet permitted by statute and regulation is a trespass, but it does assert that at least flights as low as one hundred feet "create in the ordinary mind a sense of infringement of property rights which cannot be minimized or effaced" [page 530] and constitute trespasses); (4) that when the trespasses are in such varying locations as to linear space and altitude that no easement can be acquired through them, and when they are over uncultivated woodland of which no use is being made and have caused no actual

damage or material discomfort, relief by injunction will not be granted (page 531).

Since the decision in the *Smith* case there has existed among legal writers on the subject and has been reflected in the few decisions as yet available made by courts of last resort a controversy as to whether the theory of technical trespass recognized in the *Smith* case has any proper application to invasions of unoccupied air space above the land of an owner. The opposing doctrine is not always expressed in the same form, but in general it maintains that by the common law, liberally interpreted in the light of modern conditions pertaining to an entirely new and highly important method of transportation, there exists a public right of aviation over the lands of all owners at any height which does not actually interfere in any manner with any existing use of the property. This theory has sometimes been referred to as the nuisance theory for the reason that it prefers not to recognize as a technical trespass the mere passage of aircraft without contact with anything connected with the land and tends to hold the aviator responsible only where, as in cases of nuisance, some harm has been done or some inconvenience caused. The subject is fully discussed in Hotchkiss' Treatise on Aviation Law (2d ed.) c. 3. Many of the articles in legal periodicals are there cited on page 34. Much material has been carefully gathered by Edward C. Sweeney in an article in the Journal of Air Law, vol. 3, page 329, continued in the same volume, page 531. Decisions by appellate courts are *Swetland* v. *Curtiss Airports Corp.* 55 Fed. (2d) 201, modifying the decision of the District Court in the same case, reported in 41 Fed. (2d) 929, *Hinman* v. *Pacific Air Transport*, 84 Fed. (2d) 755; certiorari denied, 300 U. S. 654, and *Thrasher* v. *Atlanta*, 178 Ga. 514. See *Cory* v. *Physical Culture Hotel, Inc.* 14 Fed. Sup. 977; affirmed, 88 Fed. (2d) 411. The uniform aeronautics act in its §§ 3 and 4 seems to adopt the nuisance theory in result, though not in form. However, the trespass theory represented by *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, is not without able defenders. See Professor Francis H. Bohlen in American Bar Association Journal,

vol. 18, page 533; Professor Edward S. Thurston in Harvard Legal Essays, page 501; *Guith* v. *Consumers Power Co.* 36 Fed. Sup. 21. And the Am. Law Inst. Restatement: Torts, § 159, comment e, reads: "An unprivileged intrusion in the space above the surface of the earth, at whatever height above the surface, is a trespass." See also comment f. By § 194 the flight is privileged, if conducted for a legitimate purpose, in a reasonable manner, at such a height as not to interfere unreasonably with the enjoyment of the surface and the air space above it, and in conformity with the regulations in force, and the burden of pleading and proving that he acted within the privilege rests upon the aviator.

Since the decision in *Smith* v. *New England Aircraft Co. Inc.* there have also been important statutory changes. A comprehensive statute regulating aircraft was enacted as St. 1935, c. 418. This was followed by St. 1939, c. 393, § 3, which, with some alteration by the legislation of 1941 in respects not important in this case, inserted into c. 90 of the General Laws the present §§ 35–40 and §§ 41–52. Sections 40A–40I were inserted by St. 1941, c. 537, § 5, and relate to the approaches to publicly owned airports. The present § 35 of c. 90 defines "Navigable air space" as "air space above the minimum safe altitudes of flight prescribed by regulation" by the aeronautics commission and adds, "Such navigable air space shall be subject to a public right of air navigation in conformity with the provisions of this chapter and with the regulations and air traffic rules issued by the commission." Section 39 forbids the commission to make any rule or regulation "inconsistent with the then current federal legislation governing aeronautics and the rules and regulations duly promulgated thereunder." Section 46 provides that flight within the navigable air space as above defined "shall be lawful unless at such a low altitude as to interfere with the then existing use to which the land or water or space over the land or water is put by the owner or occupant, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath." The wording of this section follows somewhat closely that of § 4 of the uniform aeronautics act,

except that instead of applying to flight generally it applies only to flight above the minimum height prescribed by the commission.  Counsel for both sides say in their briefs that that height, as applied to the country district here involved, and "exclusive of taking off from or landing upon an airport or other landing area" is five hundred feet, which is the same height that was prescribed by direct statutory enactment at the time of the decision in *Smith* v. *New England Aircraft Co. Inc.*  The present § 46 is so drafted as not to conflict with that decision.

In this case we have been invited to reconsider the theory upon which *Smith* v. *New England Aircraft Co. Inc.* rests in the light of the more recent discussion and decisions and to adopt in substance the "nuisance" rule hereinbefore described, which is supposed to be somewhat more favorable to the aviator.  We see no occasion to disturb the fundamental basis of the decision in the *Smith* case.  That case was not a slavish application of the ancient maxim *cujus est solum ejus est usque ad coelum.*  The just demands of modern progress were recognized, and room was left for their reasonable satisfaction, while at the same time protection was given to the landowner against that which he might naturally and justly regard as unwarranted intrusion.  Ordinarily there would seem to be no sufficient reason for making flights lower than the limits fixed by the commission.  The statute in expressly providing for the right of navigation above fixed limits by implication negatives the existence of any such general right below those limits in instances where the limits are applicable.  The only important difficulty reasonably to be apprehended would seem to arise in connection with take-offs from and landings upon fields of small size where under some circumstances it may be difficult in taking off to attain the required altitude before passing over the boundaries of adjoining lands or in landing to maintain that altitude until after the boundaries are passed.  It should be remembered, however, that the statute in §§ 40A–40I now contains adequate provisions for securing and regulating the approach to public airports, including the right of eminent domain where the exercise

of that right is necessary (see *Burnham* v. *Mayor & Aldermen of Beverly*, 309 Mass. 388), and that private airports cannot be allowed extra-legal privileges over lands of neighboring proprietors.

In accordance with the principles of the *Smith* case and with the provisions of G. L. (Ter. Ed.) c. 90, § 35, we hold that harmless flight, in a proper manner, in the exercise of the "public right of air navigation," interfering with no existing use, through the "navigable air space" reasonably established within constitutional limitations by the aeronautics commission is not a trespass upon the land of the owner below. The minimum height of five hundred feet in country districts was held in the *Smith* case to be within constitutional limitations. Whether a lower limit without compensation to the landowner would be constitutional was not there decided and need not be decided here. Ordinarily, under the present statute, flight below the established "navigable air space" does not come within the public right and constitutes a technical trespass. Whether there is a remedy by injunction depends upon the character of the land, the extent of the trespasses and of the damage, if any, and other considerations to which regard is commonly had in the matter of issuing injunctions. Flight below the "navigable air space" over lands of nearby owners in taking off from or landing upon an airport or other landing area is not, so far as appears, either prohibited or expressly permitted by present regulations. Undoubtedly it may constitute a trespass. It would seem a logical deduction from the reasoning in the *Smith* case that it would commonly constitute at least a technical trespass; but the present case does not, any more than did the *Smith* case, compel us to determine that it is always such, and that there is never a common law right of harmless passage at comparatively high levels over any portion of private land between any airport and the "navigable air space." At least, under present laws, such passage is a trespass unless substantially harmless and unless justified upon striking a reasonable balance between the landowner's right to exclusive possession free from intrusion and the public inter-

est in necessary and convenient travel by air. We do not determine that such right exists. We determine only that no greater right exists.

The facts in the case before us fail to justify flights below the level of five hundred feet over the plaintiffs' house and the immediately surrounding grounds. No public necessity is involved. There is never occasion for passing over the plaintiffs' house and grounds except in the comparatively rare instances when the wind blows from that particular direction and when there may be a "down-draught," and even then take-offs can be discontinued in planes which are incapable of climbing fast enough to reach the "navigable air space" before passing over the plaintiffs' house. Flying over the house or the surrounding grounds at a level below five hundred feet is certain to produce noise to which the plaintiffs have a right to object, even if, in view of all the factors, it does not amount to a nuisance. Indeed, the master finds that the noise of an airplane differs only slightly in intensity at various altitudes up to five hundred feet. This case is distinguishable from the *Smith* case, where the court refused an injunction against trespasses over unused brush and woodland (270 Mass. 511 at page 531). Here the injunction was rightly granted, and damages in the sum of $1 were rightly assessed against the defendant Beverly Airways, Inc.

There are no findings that the individual defendants were guilty of any wrongful conduct toward the plaintiffs. It does not appear that they have participated in any way in flying or in promoting or permitting flights over the plaintiffs' house and grounds or that they have any intention of doing so. So far as appears they may have been entirely ignorant that such flights were made. The mere fact that they held, respectively, the offices of president and treasurer of the Beverly Airways, Inc., is not enough to render them liable to this suit. The decree is to be modified by dismissing the bill as to these defendants with costs to them as against the plaintiffs. *Hewett* v. *Swift*, 3 Allen, 420, 425. *Delano* v. *Curtis*, 7 Allen, 470, 474, 475. *Tibbetts* v. *Wentworth*, 248 Mass. 468, 471, 472. *Browne* v. *Brockton National*

*Bank,* 305 Mass. 521, 531.  *Howard* v. *St. Paul Plow-Works,* 35 Fed. 743, 746, 747.  *Glucose Sugar Refining Co.* v. *St. Louis Syrup & Preserving Co.* 135 Fed. 540.  *Vassar College* v. *Loose-Wiles Biscuit Co.* 197 Fed. 982.  *Reitzer* v. *Medina Valley Irrigation Co.* 153 S. W. 380 (Texas). Fletcher, Cyc. Corp. (Perm. Ed.) § 4873.

We hardly need add that we have not here intended to deal in any way with the matter of forced landings made without fault to save life or property (see Am. Law Inst. Restatement: Torts, § 159, comments g and h), or with the operations of military or naval air forces in time of war. And no contention has been made that the corporate defendant has any right under any law or regulation of the United States relating to the use of aircraft in interstate or foreign commerce any greater than it would have under the laws of this Commonwealth.  See U. S. C., 1940 ed., Title 49, § 180.

The decree as modified is affirmed with costs to the plaintiffs against the defendant Beverly Airways, Inc.

*Ordered accordingly.*