EDWARD R. BUCK, JR. & another *vs.* CLAUSON'S INN AT COONAMESSETT, INC. & another.

Barnstable.   October 6, 1965. — October 29, 1965.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Negligence,* One owning or controlling real estate, Golf course, Corporate officer.   *Estoppel.*

Evidence merely that the president of a club operating a golf course was in charge of all arrangements for a professional golf match there and "expected that spectators would be all over the course" during it and had known for many years of a large hole in the "rough" near a fairway, but prior to the match "took no precautions for the safety of spectators with respect to the hole," did not warrant a finding of liability on his part to a spectator injured when she saw a golf ball coming toward her and fell backward into the hole.   [614–615]

Evidence at the trial of an action against a corporation operating a hotel and restaurant on premises adjacent to a golf course operated by a separate corporation, both of which corporations were under the control of a single family, did not warrant a finding that the defendant was estopped to deny that it was in control of the golf course or that it was liable to a spectator injured in a fall in a hole on the course during a professional golf match undertaken for the joint benefit of both corporations and advertised in a manner consistent with the facts respecting the corporations.   [615–616]

TORT.   Writ in the Superior Court dated April 12, 1961. The action was tried before *Paquet, J.*

*Robert E. Fast* for the plaintiffs.

*Charles R. Desmarais* for the defendants.

CUTTER, J.   The corporate defendant, Clauson's Inn at Coonamessett, Inc. (Inn), of which one Donald H. Clauson was president, operated a hotel and restaurant on premises in Falmouth adjacent to a golf course.   Clauson's Garage, Inc. owned the golf course.   A separate corporation, Country Club at Coonamessett, Inc. (Club), operated the golf course.   The individual defendant, Harvey G. Clauson, Jr. was president of Club.   There was only one "Clauson's Inn" on Cape Cod in 1960.   The mother of Harvey Clauson

and Donald Clauson was the "boss" of both Inn and Club.

The female plaintiff and her husband both went to a professional golf match at the golf course on August 13, 1960. For this the husband had bought the tickets. About 2,000 other persons also attended. The female plaintiff was standing on the edge of the eighth fairway, about 200 yards from the tee, to watch the drives land. The tee was not visible from where she was standing. She saw a golf ball coming toward her and, as she testified, was injured when she fell backward into a hole "about three feet from the fairway, in the area of higher grass called the 'rough'. . . . The hole was about three feet in diameter and three feet deep, and was lined with rocks or stones. It was surrounded by grass about six to eight inches high." She remained to see the conclusion of the 18-hole match and on that day gave no notice of her fall to anyone at the golf course.

Harvey Clauson was in charge of all arrangements for the golf match on August 13, 1960. He had known of the hole near the eighth fairway since 1946, and, "[p]rior to the match he took no precautions for the safety of spectators with respect to the hole." Advertising for the match was authorized by a committee consisting of himself, his brother Donald, and an advertising agent. "He expected that spectators would be all over the course during the match." No advertising for the match carried Club's corporate name, but certain expenses of the match were paid from a checking account of Club. Inn and Club were advertised together in 1960 under the designation "Clauson's Inn and Country Club,"[1] which, of course, was not the precise name of either corporation.

In this action of tort against Harvey Clauson, individually, and against Inn, it is alleged that each of them operated and controlled the golf course and that the female

---

[1] Tickets for the match bore this designation, as did advertisements of the match. One advertisement concluded, "For tickets — Write or Phone: Clauson's Inn." The telephone book carried only Inn's name in the directory portion and carried in a notice in the yellow advertising pages both the designation "Clauson's Inn & Country Club" and the name of Inn.

plaintiff was injured because of the negligence of each defendant or his or its agents. No action against Club appears to have been commenced and the docket reveals no motion by the plaintiffs to substitute Club as a defendant. See G. L. c. 223, § 19; c. 231, §§ 51, 138; *Genga* v. *Director Gen. of Railroads,* 243 Mass. 101, 104; *Potter* v. *John Bean Div. of Food Mach. & Chem. Corp.* 344 Mass. 420, 423–424. Cf. *Jordan* v. *County Commrs. of Bristol,* 268 Mass. 329, 333.

The judge, subject to the plaintiffs' exceptions, directed a verdict for the defendant on the counts against Harvey Clauson. The jury returned a verdict for Inn on the counts against it.

The trial judge, subject to the plaintiffs' exceptions, refused the plaintiffs' request for an instruction, viz., "If . . . [Inn] held itself out to the public as being the operator of the golf course at the time . . . and if . . . [the female plaintiff] believed . . . [Inn] to be the operator of the golf course at the time . . . [Inn] may be held responsible for negligence in the operation of the premises even though some other undisclosed corporation actually controlled the golf course at the time of the injuries." Instead, he instructed the jury that, if they should find that Inn had no "control or supervisory direction" over the golf course on the day of the match, "that is the end of the case. You will go no further." On the other hand, the jury were told to proceed to the other issues (negligence, contributory negligence, and damages) if, from the testimony including the "media of advertising," it was found that "Inn . . . did exercise control over that course that day and did have supervisory direction of it." The case is here on the plaintiffs' bill of exceptions. The evidence is stated in its aspect most favorable to the plaintiffs.

1. There was no error in directing verdicts for Harvey Clauson in the counts against him. The evidence did not warrant the conclusion that he had directly participated in the accident or that he individually had been guilty of any negligent misfeasance (as contrasted with nonfeasance)

causing injury to the female plaintiff. *Tibbetts* v. *Wentworth,* 248 Mass. 468, 472-473. See *Burnham* v. *Beverly Airways, Inc.* 311 Mass. 628, 637-638; *Refrigeration Discount Corp.* v. *Catino,* 330 Mass. 230, 235-236. See also (dealing with the analogous situation of a public officer) *Fulgoni* v. *Johnston,* 302 Mass. 421, 422-423; *Trum* v. *Paxton,* 329 Mass. 434, 438-439. Compare the more active participation in dangerous acts and negligence of the individual defendants in *Corliss* v. *Keown,* 207 Mass. 149, 151-152, and *Bottcher* v. *Buck,* 265 Mass. 4, 6. Compare also *O'Brien* v. *Peterson,* 329 Mass. 427, where the individual defendant was not merely a corporate officer or agent but a principal.

2. Liability for damage caused by the condition of premises ordinarily depends upon the control of the offending instrumentality. See *Underhill* v. *Schactman,* 337 Mass. 730, 733; *Cronin* v. *Universal Carloading & Distrib. Co.* 348 Mass. 645, 648. The plaintiffs, however, in effect contend that Inn held itself out as the proprietor or operator of the golf course and that, accordingly, there may be recovery against Inn. This is not a case where either Inn or Club has been shown to have been a concessionaire upon premises of the other. Cf. *Barron* v. *McLellan Stores Co.* 310 Mass. 778, 782-783. Cf. also *Timmins* v. *F. N. Joslin Co.* 303 Mass. 540, 542-543.[2] The somewhat ambiguous facts fall short of showing that Inn held itself out as controlling the golf course in such a way as to render it liable or to estop it to deny that it owned or was in control of the course. If there were representations, they were consistent with mere coöperation between two closely related corporations. Nothing on this record suggests that the facts concerning Club were concealed or that Club would not have been able to satisfy a judgment against it, if it had been sued or substituted as a defendant by an amendment

---

[2] Cases involving concessionaires, arising under the Workmen's Compensation Act, also are not relevant and, in any event, they rest upon statutory provisions not here applicable. See e.g. *Tindall* v. *Denholm & McKay Co.* 347 Mass. 100.

seasonably sought and allowed in the discretion of the trial judge. The case in some respects is similar to *Sherman* v. *Texas Co.* 340 Mass. 606, 608, where we held that the necessary representation of control or proprietorship was lacking.

Doubtless, the golf match was undertaken for the joint benefit of Club and of Inn, both of which presumably obtained some advertising advantage and some patronage from persons attending the match.   The advertising did not represent in terms that Inn controlled the golf course, in fact operated by Club, a separate corporation, or that Club controlled Inn.   The advertising was consistent with the facts, viz. that two separate corporations under the control of a single family operated two closely related enterprises.

We need not decide whether the evidence of a common advertising program would have warranted the conclusion that Inn controlled the golf course, although the judge's charge would have permitted that conclusion.   The charge, in any event, was at least as favorable to the plaintiffs as the evidence permitted and there was no error in refusing to give the instruction requested by the plaintiffs.[3]

*Exceptions overruled.*

---

[3] There is no occasion for us to consider (a) whether the evidence warranted the conclusion that the corporation controlling the golf course was negligent in not guarding the three foot hole in the "rough," or (b) what risks must be taken to have been assumed by one who attends as a spectator a golf match upon a country course probably used only occasionally for exhibition matches. *Shaw* v. *Boston Am. League Baseball Co.* 325 Mass. 419, 422.   *Salamoff* v. *Godfrey,* 344 Mass. 750.   See also *Andrew* v. *Stevenson,* 13 Scots L. T. 581, 582 (Sheriff's Court).   See *Farfour* v. *Mimosa Golf Club, Inc.* 240 N. C. 159, 165.   Cf. *Farinelli* v. *Laventure,* 342 Mass. 157, 160.