JOSEPH FREEDMAN CO., INC. *vs.* NORTH PENN
TRANSFER, INC.

Hampden.   December 10, 1982. — March 23, 1983.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Carrier*, Goods.  *Practice, Civil*, Finding by judge, New trial, Judgment.
   *Evidence*, Bill of lading.

Where a bill of lading issued by a carrier stated that a certain shipment
   of five reels of wire was received in apparent good order and condi-
   tion, but that the contents and internal condition of the shipment were
   unknown, the document was prima facie evidence that the shipment
   was delivered to the carrier in good condition. [553-555]
A carrier was not entitled to a new trial of an action against it for negli-
   gence in transporting a shipment where the issue on which it claimed a
   new trial, namely, that the salvage value of the shipment should have
   been deducted from the damages awarded, had been raised at trial
   and determined adversely to the carrier. [555-556]

CIVIL ACTION commenced in the Springfield Division of
the District Court Department on November 8, 1979.

The case was heard by *Walsh*, J.

*Michael G. West* for the defendant.

*Bernard Glazier* for the plaintiff.

ABRAMS, J.   The defendant appeals from a determination
of the Appellate Division of the District Courts dismissing a
report from a District Court judge which concluded that the
defendant was liable to the plaintiff for goods which the de-
fendant carried, and which arrived in damaged condition.
We affirm the order dismissing the report.[1]

---

[1] This appeal is properly before us.  The plaintiff waived its right to an
appeal to the Superior Court by commencing this action in a District
Court.  G. L. c. 231, § 103.  Compare *Locke* v. *Slater*, 387 Mass. 682,
684 (1982), with *Hudson* v. *Massachusetts Property Ins. Underwriting
Ass'n*, 386 Mass. 450, 452 n.2 (1982).  By failing to act within the statutory

We summarize the facts.[2]  Joseph Freedman Co., Inc. (Freedman), a dealer in scrap and surplus metals, engaged the defendant, North Penn Transfer, Inc. (North Penn), an interstate common carrier, under a document entitled a "Straight Bill of Lading."  North Penn was hired to ship five reels of insulated aluminum cable from Freedman's Springfield location to its customer, Nassau Cable Co., Inc. (Nassau), in Mineola, New York.  Freedman paid North Penn for the shipping service.

The reels were placed on one of North Penn's trucks under the supervision of one of the defendant's drivers, who was able to observe the condition of the reels.  Although one or more of the reels had broken apart, the driver accepted the load and took it to North Penn's Connecticut depot.  Another of the defendant's drivers took the load from this depot to Brooklyn, New York, and a third driver then completed the delivery to Mineola.  Each of the drivers said that the reels were in poor condition, and that many stops were necessary to resecure the reels.  Each driver stated that while making these frequent stops he observed the reels breaking apart but, nevertheless, continued on the 160 mile route over turnpikes and city roads with frequent traffic stops and changes in driving speed.

When the goods were delivered to Nassau, all the wire had broken off the reels.  The wire was so badly twisted that it was valueless both to Nassau and to the plaintiff because of the excessive cost of rewinding the wire.  Freedman attempted, but was unable, to find a buyer for the wire in its damaged condition, and at the time of trial the reels remained with Nassau.

time limit, the defendant waived its right to remove this matter to the Superior Court.  The defendant sought review of the District Court decision in the Appellate Division of the District Courts.  G. L. c. 231, § 108. After a final decision by the Appellate Division, the defendant could appeal to this court.  G. L. c. 231, § 109.  See *Third Nat'l Bank* v. *Continental Ins. Co., ante* 240, 242 (1983).

[2] These facts are set out in the judge's report to the Appellate Division.

The judge found that Freedman delivered the reels to North Penn in good condition, and that the reels were damaged when the defendant delivered them to Nassau. The judge also found that the goods could not be salvaged without incurring excessive expense, and awarded damages for the sale price plus transportation costs. At the close of the plaintiff's evidence, the defendant moved for a "directed finding" in its favor. After trial, the defendant moved for a new trial, and to alter or amend the judgment, seeking a further hearing on the value of the goods as delivered to Nassau, so that the amount of salvage value would be deducted from the judgment. See Dist. Mun. Cts. R. Civ. P. 59 (1975). In the alternative, the defendant sought to have the judgment amended so that it was not obligated to pay Freedman until the wire was transferred to North Penn.

1. *Denial of North Penn's motion for a directed finding in its favor.* North Penn challenges the judge's denial of a motion for a directed finding[3] in its favor at the close of the plaintiff's evidence. According to North Penn, Freedman failed to establish a prima facie case by showing delivery of the wire to North Penn in good condition and its arrival at Nassau in damaged condition. See, e.g., *Northern Indus. Chem. Co. v. Director Gen. of R.Rs.,* 249 Mass. 246, 253-254, cert. denied, 266 U.S. 617 (1924); *Richards v. Doe,* 100 Mass. 524, 526 (1868); *M & S Tomato Repacking Co. v. Boston & Me. Corp.,* 310 F. Supp. 186, 189 (D. Mass. 1970). North Penn claims Freedman failed to establish its prima facie case because it did not present evidence on one essential element — that the wire was delivered to it in good condition. Therefore, the defendant argues that the denial of its motion for a directed finding was improper. We do not agree.

---

[3] We treat this denial of a directed finding "as, in effect, denial of a request for a ruling that a finding for the plaintiff was not warranted by the evidence." *Gallant v. Federal Mut. Ins. Co.,* 354 Mass. 146, 149 (1968). *Forbes v. Gordon & Gerber, Inc.,* 298 Mass. 91, 94-95 (1937). *Menici v. Orton Crane & Shovel Co.,* 285 Mass. 499, 500-501 (1934).

In reviewing the denial of this motion, we apply essentially the same standard as we would apply to a review of a motion for a directed verdict in jury cases.[4] See *Forbes* v. *Gordon & Gerber, Inc.*, 298 Mass. 91, 94-95 (1937). *Menici* v. *Orton Crane & Shovel Co.*, 285 Mass. 499, 500-501 (1934). See generally J.R. Nolan, Civil Practice § 729 (1975). We review the denial of a request for a directed finding to determine whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). *Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 786 (1982). *Virta* v. *Mackey*, 343 Mass. 286, 290 (1961). If there is any evidence to support the judge's finding that the reels of wire were delivered to North Penn in good condition, we may not upset that finding. See *Buckley* v. *Railway Express Agency*, 323 Mass. 448, 451 (1948).[5]

The plaintiff's goods were shipped pursuant to a "Straight Bill of Lading." See G. L. c. 106, §§ 7-301, 7-309, 7-401. The bill of lading recites that the carrier received the reels in apparent good order and condition. The bill of lading indicates that the contents and internal condition of the packages were unknown. However, North Penn made no notations on the bill of any visible damages or defects, such as twisted wire, other than that one reel appeared broken.

---

[4] Rule 50 of the Massachusetts Rules of Civil Procedure, 365 Mass. 814 (1974), governing a motion for a directed verdict is inapplicable to District Court procedure. Dist. Mun. Cts. R. Civ. P. 50 (1975). The motion for a directed finding is the comparable motion in a District Court. See *Wire & Textile Mach., Inc.* v. *Robinson*, 332 Mass. 417, 418 (1955). See also Dist. Mun. Cts. R. Civ. P. 52, 64 (1975).

[5] The defendant's appeal challenges the judge's denial of its motion only on the ground that there was no evidence to establish that Freedman delivered the reels of wire to it in good condition.

If a bill of lading states that the goods were received in apparent good order, qualified by a statement that the condition and contents of the packages were unknown, the bill of lading is prima facie evidence that, as to all circumstances which were open to inspection and visible, the goods were in good order. *Plastileather Corp.* v. *Aetna Casualty & Sur. Co.,* 361 Mass. 356, 358-359 (1972). *Canney* v. *American Express Co.,* 222 Mass. 348, 349 (1916). *Richards* v. *Doe,* 100 Mass. 524, 526 (1868). *Hastings* v. *Pepper,* 11 Pick. 40 (1831). See *Northern Indus. Chem. Co.* v. *Director Gen. of R.Rs.,* 249 Mass. 246, 253-254 (1924); Annot., 33 A.L.R.2d 867, 872-879 (1954).[6] The defendant issued the bill of lading. That bill of lading was prima facie evidence that the reels were delivered to North Penn in good condition and, consequently, the defendant was not entitled to a directed finding in its favor.[7]

2. *Denial of North Penn's motion for a new trial and to alter or amend the judgment.* North Penn also challenges the judge's denial of its motion for a new trial and to alter or amend the judgment. The defendant argues that the salvage value of the goods should have been deducted from the amount of damages awarded. The defendant claims that Freedman failed to meet its burden of proof that the damaged wire had no market value, and that, consequently, the defendant is entitled to a new trial to determine the market value of the aluminum wire as scrap. Alternatively, North Penn asserts that payment of the judgment to the plaintiff should be conditioned on Freedman's transferring the wire to North Penn.

---

[6] While the defendant had the right to go forward, and did go forward, with conflicting evidence to rebut this prima facie evidence, see *Miles* v. *Edward O. Tabor, M.D., Inc., supra; Cook* v. *Farm Serv. Stores, Inc.,* 301 Mass. 564, 566 (1938), the resolution of conflicting evidence is for the trial judge. See *Young* v. *Young,* 333 Mass. 767 (1955).

[7] The carrier accepted the goods, observing that one reel was broken. After the goods had been shipped part of the way, the condition of the goods was noted as poor. The judge was free to draw the inference that the carrier was responsible for the deteriorating condition.

The short answer to North Penn's argument is that it cannot use a motion for a new trial under Dist. Mun. Cts. R. Civ. P. 59 (a) (1975) to raise issues that could have been raised at trial. See *Arrigo* v. *Lindquist,* 324 Mass. 278, 281 (1949). The judge found that Freedman was unable to resell the wire as scrap because it was too damaged. Thus, there was evidence on which to award the sale price plus transportation costs as the measure of damages.

The defendant makes no claim that there was newly discovered evidence entitling it to a new trial.[8] North Penn's motion for a new trial therefore "sought reconsideration on a question of fact at issue at the trial and decided by the judge." *Bondsville Realty, Inc.* v. *Diamond Int'l Corp.,* 360 Mass. 870, 871 (1972). *Devore* v. *Good,* 321 Mass. 84, 85-86 (1947). There was no error in denying the motion for a new trial. See *Menici* v. *Orton Crane & Shovel Co.,* 285 Mass. 499, 502 (1934).

The order of the Appellate Division of the District Courts dismissing the report is affirmed.

*So ordered.*

---

[8] The defendant had ample opportunity at trial to request that the wire be turned over to it. There is nothing in the record to indicate that the request was made or denied. It is too late to raise that issue on a motion to amend the judgment, or on a motion for a new trial.