Cowin, J.
BACKGROUND
This case is an appeal pursuant to G.L.c. 239, §5. The defendant, tenant Custom House Transportation, Inc., has appealed a decision of the District Court granting possession of the premises to the plaintiff, landlord Reddington Corp., as well as a recovery of $1 1,510.50 plus costs. The matter was heard in a one-day jury-waived trial on October 15, 1997, at which John Reddington, president of the plaintiff corporation, and his wife, Catherine Reddington, keeper of the records for the corporation, testified.
The following facts are undisputed. The plaintiff is a commercial landlord and owns the premises at 20 Rex Drive, Braintree. The defendant leased said premises for several years. The instant dispute arises as a result of a lease entered into between the parties on October 27, 1995 for the period from said date until June 18, 1996. The tenant remained on the premises after June 18, 1996 as a tenant-at-will.[1] Rent was due on the 18th of each month and rent was paid on June 18, 1996 and July 18, 1996. On August 17, 1996, the tenant caused a notice that he was planning to vacate to be delivered to the plaintiff indicating its intent to vacate the premises on October 11,1996.[2] On August 21,1996, the plaintiff served the defendant in hand a notice to quit for nonpayment of rent, the nonpayment being for August 1996 in the amount of $5,755. A 14-day notice to quit is required under the lease if the sole basis for the notice is nonpayment of rent. A security deposit of $6,065.00 was paid by the tenant to the landlord and has not been returned to the tenant.
The summary process complaint and summons filed in the original District Court action claimed that the tenant occupied the premises unlawfully because it had breached the lease by failing to pay rent when due, had failed to use and maintain the property as agreed and had occupied areas to which it held no possessory or leasehold interest. The account annexed on the summons and complaint indicated that rent was due in the amount of $5,755 on August 18, and September 18, 1996, respectively, for a total of $11,510.00 plus interest, costs and attorneys fees.
Following the trial, the Court suggested, and the parties agreed, that the only issues to be resolved were the four set forth in the “Discussion” section. The parties further agreed at the hearing that, rather than issue traditional findings and rulings, the Court would issue an opinion (in the nature of a summary judgment decision) resolving the above issues.
DISCUSSION
1. Paragraph 19 of the lease between the parties provides in part as follows;
In the event that:
(a) The LESSEE shall default in the payment of any installment of rent or other sum herein specified and such default shall continue for ten (10) days after written notice thereof; or
(b) The LESSEE shall default in the observance or performance of any other of the LESSEE’S covenants, agreements, or obligations hereunder and such default shall not be corrected within thirty (30) days after written notice thereof; or
*564 (c) The LESSEE shall be declared bankrupt or insolvent according to law, or if any assignment shall be made of LESSEE’S property for the benefit of creditors,
then the LESSOR shall have the right thereafter, while such default continues, to re-enter and take complete possession of the leased premises, to declare the term of this lease ended, and remove the LESSEE’S effects, without prejudice to any remedies which might be otherwise used for arrears of rent or other default.
Does this provision require that ten-days written notice of nonpayment of rent be provided the tenant before the landlord can give a notice to quit, or is this provision simply a further remedy in addition to all other remedies possessed under law by the landlord?[3]
Pursuant to the provisions of paragraph 19 of the lease, said lease was not properly terminated by the plaintiff landlord. Paragraph 19 provides that the landlord may not avail itself of the serious remedy of termination until after he has sent written notice of default in the payment of rent to ihe tenant and the tenant has not cured. The landlord maintains that this notice procedure is available in addition to all other remedies, but such an interpretation would render this paragraph’s provisions meaningless. The landlord’s attempt to terminate was thus a nullify and the tenancy was only terminated by the tenant’s notice to vacate.
2.Exhibit C of the lease, in paragraph 6, provides as follows;
Lessor hereby acknowledges Lessee’s payment of $6,065.00 as and for Lessor’s security for Lessee’s payment of all rent and other sums of money payable for the term and for the faithful performance by Lessee of all other covenants and agreements under the terms of this Lease. The Lessee shall have no right to require Lessor to indemnify itself from this deposit for any particular violation or default of Lessee, the use of this deposit to indemnify Lessor being within Lessor’s sole discretion. No interest shall be payable to Lessee on account of this deposit and Lessor may commingle the funds from this deposit with other of its funds.
This deposit, or any part thereof, not previously applied by Lessor, shall be returned to Lessee only after the expiration of the term of this lease, or the date on which any renewal term expires, whichever is later, and only after Lessee has fully vacated the Premises, notwithstanding that this lease has been terminated by Lessor; it being the intention of the parties that this deposit shall secure Lessor not only as to the default by Lessee before such termination, but also to secure Lessor from any deficiency of rent or other charges payable to Lessor by Lessee.
Pursuant to this paragraph 6, is the security deposit of $6,065.00 security for tenant’s payment of rent and thus to be deducted from the amount of rent due the landlord or is it security for the performance of all agreements under the lease?
Pursuant to the above paragraph 6, the security deposit is provided to the landlord as security for all that the tenant owes, including, but not limited to, rent. A declaration as to the landlord’s rights under the security deposit clause is not properly part of a summary process proceeding. See Jinwala v. Bizzaro, 24 Mass.App.Ct. 1, 6, n.4 (1987). Accordingly, I do not rule on whether the landlord may utilize said deposit for rent or for any other purpose. Judgment will simply enter for the plaintiff landlord for two months’ rent.
3. Exhibit C of the lease, in paragraph 3, provides as follows:
Lessee shall pay for all utilities to the premises including, without limiting the generality thereof, all electric, gas, water and sewer charges for the premises. Lessee shall create accounts in its name with each utility provider and shall make such payments directly to that provider.
The original complaint and summons sought only $11,510.00 (two months’ rent) plus interest, costs and attorneys fees. Because of the provision in paragraph 3, is the landlord entitled to add to the rent due for August and September 1996, the utility bills due for those time periods?[4]
As the landlord did not request the payment of utilities in the documents initiating the instant proceeding and did not file a motion to amend the pleadings, he is not entitled to judgment for payment of the utilities.
4. Since the tenant’s notice to vacate indicated it would vacate on October 11, 1996 and the rental period was until the eighteenth of each month, must the tenant pay any more than 34 of the rent for the period ending October 18, 1996?
Yes. The tenant owes the landlord for two full months’ rent. In a tenancy-at-will, the time specified in a notice for termination must be a date on which rent is due. Connors v. Wick, 317 Mass. 628, 630-31 (1945).
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment for possession and for the sum of $11,510.00 will enter for the plaintiff, Custom Transportation Service, Inc.

 Accordingly, the terms of the expired, written lease continued in effect. See Addis v. Steele, 38 Mass.App.Ct. 433, 438 (1995).

 It is assumed that the tenant vacated the premises on this date.

 Both parties agree that no such written notice of nonpayment of rent was provided.

 Evidence was introduced as to such amounts and that the landlord was responsible to the utility companies for said amounts.