Doyle, P.J.
In this action in tort, plaintiff Anna Vitale (“Vitale”) seeks damages for personal injuries sustained in consequence of the alleged negligence of defendant Otis Elevator Co. (“Otis”) in failing to maintain a public elevator in the Harbor Towers Garage (“Harbor Towers”) in Boston, Massachusetts. The elevators in question were installed, repaired and generally serviced by Otis under contract with First City Development Corp.[1] which owns and controls Harbor Towers.
The reported evidence may be summarized as follows: On the morning of July 27,1978, Vitale, her husband and four adult companions parked their car in the Harbor Towers Garage and took an elevator, without incident, to the street level. The group returned to the garage that evening and proceeded to enter the elevator on the ground floor. The elevator in question had a single door (as opposed to two, biparting doors) which closed from left to right as one faced the back of the elevator from the outside. The plaintiffs companions preceded her into the elevator. As Vitale boarded, the elevator door began to close, striking her left arm in which she was holding packages. Vitale endeavored to push the door back with her free, right hand and, simultaneously, to maneuver her body into the elevator before the door closed. The door did not retract when pushed by Vitale. Vitale managed to board and was turned around facing the door as it closed on her hand. The fifth metacarpal of the little finger on her right hand was broken and the plaintiff incurred medical expenses in consequence of her injury.
The plaintiff testified that she subsequently examined the door and the *206 rubber strip or “safety edge” was missing.
Testimony was elicited from a Mr. Keefe, an Otis employee who served as maintenance 'mechanic on the Harbor Towers elevators at the time in question. Keefe stated that Otis’ contract with Harbor Towers required not only bi-monthly inspections of the four elevators, which included a check on the operation of the elevator doors and microswitch contacts and the presence of “safety edges,” but also maintenance and repair works as needed and called for by Harbor Towers.
Keefe testified that each elevator door actually consists of a car door and a hall door. When properly functioning, the safety edge retracts when pushed and thereby makes contact with a micro-switch located midway up the car door. This switch causes the door to reopen. A second micro-switch situated at the top of the door overrides the first switch when the door is completely closed, permitting the door to remain closed. If either micro-switch malfunctions, the door closes even if the safety edge retracts as the result of contact with an object. It is also possible, however, that the failure of one of the micro-switches could completely prevent the door from closing. In any event, the door would not retract under any circumstances if the safety edge were removed.
Keefe explained that the metal contacts of the micro-switches could corrode if they came into contact with water which could lead to micro-switch malfunction. There was evidence that Harbor Towers is an open garage without walls and that the skylight at the top of the elevator shaft had blown off six months prior to the plaintiffs mishap during the “Blizzard of 78.” Rain had been blowing directly down the shaft and water had collected in the elevator pits. Otis had twice advised Harbor Towers by letter of the water accumulation and had recommended its removal. Responsibility for the same rested with Harbor Towers.
Although n ot required by Otis under its contract with Harbor Towers, Keefe habitually made a daily inspection of the garage elevators simply because he parked his car there. Keefe testified that on the morning of July 27,1978, he found the door of the elevator in question to be operational and the safety edge to be in place. Keefe explained that the safety edges or rubber strips could be removed by someone other than a mechanic, including a vandal.
There was further evidence that the annual City of Boston Safety Test was performed by a City Inspector on the Harbor Towers elevators on July 20, 1978, one week prior to the plaintiffs accident. The elevator in question passed inspection and a certificate was issued. No report was made of any malfunction of the doors, of the absence of safety edges or of any violation requiring repair by Otis.
At the close of the plaintiffs case, the defendant submitted fifteen, written requests for rulings of law and moved that judgment be entered for the defendant.[2] After argument, the motion was taken under advisement and trial was resumed. The defendant renewed its written requests at the close of all the evidence.
The trial court entered judgment for the plaintiff in the sum of $10,144.00. The defendant thereafter prosecuted an appeal to this Division on a charge of error in the trial court’s denial of ten of its fifteen requests for rulings of law. We confine our review to the court’s denial of the following requested rulings which are dispositive of this appeal:
2. The evidence does not warrant a finding for the plaintiff against *207 the defendant, Otis. '
10. The evidence does not warrant a finding that the plaintiffs alleged injuries were proximately caused by any negligence of defendant, Otis.
1. Defendant’s request for ruling number 2 sought a determination that the evidence was insufficient as a matter of law to sustain a judgment for the plaintiff. We conclude that the evidence, even when viewed in the light most favorable to the plaintiff, Forlano v. Hughes, 393 Mass. 502, 504 (1984); Poirier v. Plymouth, 374 Mass. 206, 212 (1978), does not adequately support the court’s ultimate finding and that, accordingly, judgment must be entered for the defendant.
Otis’ contractual obligations to Harbor Towers to maintain the-garage' elevators in a safe condition entailed a concomitant duty to refrain from negligent acts or omissions, the foreseeable consequences of which would result in harm to third parties. Banaghan v. Dewey, 340 Mass. 73, 80 (1959). To recover for an alleged violation of Otis’ duty of reasonable care, it was incumbent upon the plaintiff to demonstrate that her injury was proximately caused by a negligent act or omission of Otis. See, generally, LaClair v. Silberline Mfg. Co., 379 Mass. 21, 31 (1979); Triangle Dress Inc. v. Bay State Service, Inc., 356 Mass. 440, 441-442 (1969). The evidence advanced by the plaintiff establishes only that the elevator door which closed on her hand was defective. Proof of a defect at the time of the accident is not, however, equivalent to proof of negligence. Bernstein v. Highland Assoc. of Winchester, 1 Mass. App. Ct. 132, 134 (1973). The burden devolved upon the plaintiff to prove negligence and causation by a preponderance of the evidence or a “balance of probabilities.” Kenney v. Sears, Roebuck & Co., 355 Mass. 604, 608 (1969). The plaintiff was not entitled on the facts of this case to invoke the doctrine formerly denominated as res ipsa loquitur. Bernstein v. Highland Assoc. of Worcester, at 133.
The totality of the plaintiffs evidence suggests two competing theories of causation. The failure of the elevator door to retract upon contact with the plaintiffs hand was equally consistent with either an absence of safety edges or a micro-switch malfunction attributable to corrosion. As the degree of proof adduced by the plaintiff failed to exceed the level of mere possibility rather than probability, a subsidiary finding of causation herein could have been premised only upon impermissible speculation and conjecture.[3] Miga v. Holyoke, 398 Mass. 343, 348 (1986); Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983); Alholm v. Wareham, 371 Mass. 621, 626-627 (1976). More significantly, at least one theory of causation would not have necessarily entailed negligence by the defendant. The safety edge on the elevator door could have been removed by unauthorized persons or vandals for whom the defendant could not be held responsible. See, e.g., Mendum v. M.B.T.A., 1 Mass. App. Ct. (1974). Further, given the short duration of the existence of the defect, no negligence could be inferred from the defendant’s failure to observe and rectify the problem before the plaintiffs mishap. See, e.g., Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 167 (1973); Briggs v. Taylor, 397 Mass. 1010 (1986). In short,
when the precise cause is left to conjecture and maybe as reasonably attributed to a condition for which no liability attaches as to one for *208 which it does, then a [finding] should be directed the
Currie v. Lee Equipment, 362 Mass. 765, 768 (1973); Corsetti v. Stone Co., 396 Mass. 1, 24 (1985). See Galner v. Otis Elev. Co., 258 Mass. 441, 442-443 (1927).
2. The plaintiffs failure to satisfy her burden of proof entitled the defendant to the allowance of requests for rulings of law numbers 2 and 10 and, ultimately, to' a.judgment in its favor.
The trial court’s finding for the' plaintiff is reversed. Judgment is to be entered for the defendant.

 Count 11 of the plaintiffs complaint against First City Development Corp. was dismissed by stipulation on October 30,1981 in the Superior Court Department. The case was then transferred for trial to the Somerville Division of the District Court Department.

See Dist./Mun. Cts. R. Civ. P. 41 (b) (.2).

 We remain cognizant that as actions in tort for negligence are characteristically replete with factual issues, intrusion by an appellate court into the decision making or fact finding processes of the trial court are rare. MacDonald v. Ortho Pharmaceutical Corp., 394 Mass. 131, 140 (1985). The sufficiency of the evidence, however, remains a question of law appropriate for appellate review.