Merrick, J.
This is an action in negligence against the corporate owners and management of the Bostonian Hotel for personal injuries sustained by a guest in a fall in her hotel room. Judgment was entered for the plaintiff, and the defendants filed this Dist./Mun. Cts. R. A. D. A, Rule 8C appeal of the court’s denial of their Mass. R. Civ. R, Rule 41(b) (2) motion for involuntary dismissal.
Given the nature of the case and the issue presented, we recite all the material evidence, considered in the light most favorable to the plaintiff. Enrich v. Windmere Corp., 416 Mass. 83, 84-85 (1993); Gottlin v. Graves, 40 Mass. App. Ct. 155, 157 (1996); Espinola v. Riley’s Liquors, Inc., 1994 Mass. App. Div. 96.
The plaintiff and her husband checked into Room 337 of the Bostonian Hotel on February 27,1993 between 3:30 and 4:00 RM. Before proceeding to the hotel, they spent approximately two and one-half hours having lunch at “Three Cheers” on Congress Street, where the plaintiff consumed two or three vodka tonics. After registering, they went to their room and waited for the bellman to bring their suitcase.
The entrance to the hotel room was quite unusual. It consisted of a small, horizontal hall leading to an interior stairway down to the bath and room proper. The stairway consisted of five stairs, with a handrail on the right (descending) side. The stairs and floor of the room were covered with a wall to wall pile carpet. The entrance was described by one of the plaintiffs witnesses as follows:
When you go in the room, the door opens and you immediately face a wall and turn left and the stairs are there. Your first vision of the stairs is when you turn you see a ceiling. You have to look to see where the stairs go. It’s sort of — it’s quite abrupt to me.
The plaintiff and her husband entered, walked down the stairs and explored the room for a few minutes until they heard the bellman’s knock on the door. The plaintiff obtained “a couple of dollars” from her husband for a tip, and walked back up the stairs. She took the suitcase, which weighed twenty pounds, from the bellman and he left.[2] The plaintiff then started to go down the stairs. Because she had the suitcase in her right hand, she could not hold the handrail. She stepped forward on the landing with her right foot and, in her words, “slipped on the stairs and fell [and landed] at the bottom of the stairs on the floor.”
*146 At this point, the plaintiff did not know the cause of her fall. She and her husband called for a wheelchair and while they waited, the husband examined the stairs.[3] The husband testified that he was in the tile and carpet installation business[4] and that he observed the following: “The risers are supposed to be in code, you know, so many inches high. Well, the top one was shorter than the rest of the stairs.” The pile of the carpet “was all flattened out.” “I looked at it and said [to the plaintiff], ‘there’s the problem right there, you know. That’s why you fell.”'
The plaintiff testified that she also made some observations as she was leaving the room in a wheelchair. ‘The top portion of the carpet at the top of the step, from the landing into the room, was worn. It showed the pile of the carpet was matted. It showed there was a ridging from underneath.” She further testified as to statements made by her or her husband to the hotel employee who assisted them. “We[5] said to [the hotel employee], ‘Look at the condition of the stair. We think it’s too smoothed, the carpeting, and it’s so rounded off, that that’s what caused me to slip and fall.’” When asked if she could remember exactly what she said to the hotel employee, she replied, “Not exactly but — with the essence that my slip, from what we could determine, was caused by poor carpet conditions and that the stair itself didn’t seem to be in the right shape, it was sloping forward, it was just a worn looking stair that was dangerous.” When asked, “Did you tell her [the hotel employee] that you didn’t notice the drop from the first step and you fell?” she answered, “Something to that effect was said.”
Four months later, in June, 1993, the plaintiff returned to the hotel room with her husband, her expert witness, Norman Shippee (“Shippee”), and the hotel manager. She testified that “the staircase was in the same condition. The stairs’ condition still appeared — the carpeting appeared worn and the ridge was still there. It was very rounded.”
Shippee, plaintiff’s expert witness, is a self-employed clerk of the works on construction jobs, with experience as a construction superintendent and degrees in building construction and supervision. Shippee testified, based on his examination of the stairs in June, that the padding under the carpet on the first step, or landing, did not go quite to the edge of the step at the riser. As a consequence, the surface of the carpet at the edge of the landing dropped 1/4 inch lower than the surface of the carpet on the rest of the landing. Shippee further testified that the 1/4 inch drop at the very edge of the landing constituted a “defect” and indicated that the carpeting had not been properly installed.
Shippee was not allowed to testify as to whether the purported “defect” was hazardous or caused the plaintiff’s fall. Nor was he allowed to testify as to what effect the condition would have on a person walking on the stairs. These evidentiary rulings were not appealed.
On the subject of the cause of her fall, the plaintiff testified as follows:
“Q: With respect to the fall itself, Mrs. Esposito, do you have any memory of tripping over your own feet when you fell down the stairs?
*147 “A: No. No tripping.
“Q: Do you know what it was that caused you to fall?
“A I believe it was the sloping on the step.”[6]
The trial judge made extensive findings of fact which included, with respect to causation, the following:
“9. Upon putting her foot on the top of the staircase, Mrs. Esposito slipped off the top step, falling down the staircase and coming to rest on the floor of the room.
“10. At the time that Mrs. Esposito slipped on the top of the stairs, the condition of the flooring on the top step was such that the carpeting was matted and smooth and the pad underneath the carpet did not reach to the top of the step, creating a ridge, and a sloping toward the nose of the stair.
“12. The condition of the carpet was defective and resulted in a dangerous condition, which, when Mrs. Esposito stepped on it, caused her to slip and fall down the stairway and injure her knee.”
The defendants’ specific claim of error in the denial of their Mass. R Civ. R, Rule 41 (b) (2) motion for involuntary dismissal is that the evidence was insufficient to permit the finding that the caxpet was “a dangerous condition, which, when Mrs. Esposito stepped on it, caused her to slip and fall down the stairway and injure her knee.” We concur.
The denial of the defendant’s motion for involuntary dismissal was proper if “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Joseph Freedman Co. v. North Penn Transfer, Inc., 388 Mass. 551, 554 (1983); Polsinetti v. National Amusements, Inc., 1997 Mass. App. Div. 150, 151. The burden of proof was on the plaintiff to prove both negligence and causation by a preponderance of the evidence or the “balance of probabilities.” Vitale v. Otis Elev. Co., 1987 Mass. App. Div. 205, 207. See also Goffredo v. Mercedes-Benz Truck Co., 402 Mass. 97, 102 (1988).
On the issue of causation, ‘[tjhere must be something amounting to proof, either by direct evidence or rational inference of probabilities from established facts. While the plaintiff is not bound to exclude every other possibility of cause for his injury except that of the negligence of the defendant, he is required to show by evidence a greater likelihood that it came from an act of negligence for which the defendant is responsible than from a cause for which the defendant is not liable.’
Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 329 (1973), quoting from Bigwood v. Boston & Northern St. Ry., 209 Mass. 345, 348 (1911).
Evidence of the characteristics of the purported “defect” in this case was insufficient to warrant a finding that it constituted a hazardous condition. Photographs of *148 the scene introduced into evidence added nothing to the parties’ testimony. Compare Pierce v. Toys “R” Us-Mass., Inc., 1998 Mass. App. Div. 135; Martin v. Harry E. Dillon, Inc., 1991 Mass. App. Div. 184, 186. There was no testimony from the plaintiffs expert as to whether or how the condition would reasonably cause a fall. There was no direct evidence as to the cause of the plaintiffs fall other than her own statement that she “believe [d]” it was the condition described, a matter of pure conjecture or surmise arrived at only after and upon consultation with her husband, rather than at the time of the event. In that regard, this case resembles Jacobs v. Wm. Filene’s Sons Co., 339 Mass. 774 (1959) in which the plaintiff, who was the only witness, fell while walking down a flight of metal stairs in the defendant’s store. She testified that she had “perhaps walked down one step, and I must have, I don’t know how it happened, but the first, thing I knew I was falling, so I grasped, went for the railing.” After her fall, she noticed that the stairs were wet with an inch or two of mud on them. The Court held that there was no error in the direction of a verdict for the defendant. As in the instant case, “[t]he cause of the plaintiff's fall was a matter of conjecture. It does not appear that it resulted from negligence for which the defendant was responsible rather than from a cause for which itwas not.” Id. See also, Polsinetti v. National Amusements, Inc., supra at 152.
The trial court’s judgment for the plaintiff reversed. Judgment is to be entered for the defendants.
So ordered.

 No issue was raised at trial that either the bellman’s failure to carry the bag down the stairs, or the unusual layout of the room was relevant on the question of liability.

 There was some discrepancy between the husband’s deposition and his trial testimony as to when he first examined the stairs. However, the evidence must be analyzed in the light most favorable to the plaintiff on this appeal of the denial of the defendant’s Rule 41(b) (2) motion.

 The husband was not listed by plaintiff’s counsel as an expert witness. When defendants’ counsel objected upon the husband’s description of his business, plaintiff’s counsel stated that the husband was not testifying as an expert.

 The plaintiff’s testimony as to these statements was all in the first person plural. There was no objection.

 This answer was the subject of a motion to strike. The answer was, at minimum, nonresponsive, and there is a question as to a foundation for the answer. Any discussion of the motion and the court’s ruling is noted on the transcript as “Inaudible conversation.” There has been no effort to clarify the record, and no appeal on the issue. We treat the answer as standing. Compare Barricelli v. Burger King Corp., 1994 Mass. App. Div. 52. (ruling of judge audible, but ambiguous, requiring new trial).