908 So.2d 230 (2005)
TENN TOM BUILDING, a joint venture
v.
OLEN, NICHOLAS & COPELAND, P.C. and 166 Government Street, L.L.C.
1030967.
Supreme Court of Alabama.
February 25, 2005.
*231 Thomas M. Galloway, Jr., of Galloway, Smith, Wettermark & Everest, LLP, Mobile, for appellant.
Steven Olen, S. Russ Copeland, and Michael A. Youngpeter of Olen, Nicholas & Copeland, P.C., Mobile, for appellees.
WOODALL, Justice.
Tenn Tom Building, a joint venture ("Tenn Tom"), appeals from judgments entered against it in favor of Olen, Nicholas & Copeland, P.C., and 166 Government Street, L.L.C. (hereinafter referred to collectively as "the adjoining owners"), in the adjoining owners' action against Tenn Tom alleging negligence. We reverse and remand.

I.
In 1982, Tenn Tom purchased a vacant building in downtown Mobile. Although Tenn Tom planned to develop the building, it did not do so, and the building remained vacant until July 7, 2001, when it was destroyed by fire. During the fire, one of the walls of the building fell onto the adjoining owners' building, damaging their building and the offices it contained.
It is undisputed that the fire was intentionally set at multiple places in Tenn Tom's building by a trespasser or trespassers. Although Tenn Tom was aware that trespassers had entered the building on numerous occasions during its ownership, there was no evidence of any fire in the building before July 7, 2001.

II.
On March 15, 2002, the adjoining owners sued Tenn Tom. In pertinent part, the adjoining owners alleged that their property had been damaged by Tenn Tom's negligence. More specifically, they alleged that Tenn Tom had "negligently allowed [its building] to remain in a state of such disrepair so as to allow transients to live in the structure." Further, they alleged that Tenn Tom "took no actions to prevent the occupancy of said structure and the foreseeable starting of fires and other activities." Tenn Tom answered the complaint, and later moved for a summary judgment. *232 The trial court denied the summary-judgment motion, and the case went to trial.
At the close of the adjoining owners' case-in-chief and again at the close of all the evidence, Tenn Tom moved for a judgment as a matter of law as to the adjoining owners' negligence claim, the only claim tried. The trial court denied the motions. On January 27, 2004, the jury returned verdicts totaling $518,774.21 in favor of the adjoining owners. On that same date, the trial court entered judgments consistent with the verdicts. On February 2, 2004, Tenn Tom renewed its motion for a judgment as a matter of law or, in the alternative, moved for a new trial. The trial court denied Tenn Tom's posttrial motion, and Tenn Tom appealed.

III.
Our standard of review of a ruling on a motion for a judgment as a matter of law ("JML") is well established:
"When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying the motion. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate issue is whether the nonmovant has presented sufficient evidence to allow the case or issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). In an action filed after June 11, 1987, the nonmovant must present substantial evidence to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. If the question is one of law, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992)."
Ex parte Alfa Mut. Fire Ins. Co., 742 So.2d 1237, 1240 (Ala.1999).

IV.
Tenn Tom argues that the trial court erred in denying its motion for a JML as to the adjoining owners' negligence claim because, it argues, it had no duty to protect the adjoining owners from the criminal act of any unknown third party. Specifically, Tenn Tom argues that it owed the adjoining owners no duty because "[t]here is no evidence ... that someone intentionally starting a fire to destroy [its] building was a probability or, hence, foreseeable." Tenn Tom's brief at 7 (emphasis in original). In response, the adjoining owners argue: "The facts ... establish that Tenn Tom had every reason to anticipate and foresee, and did anticipate and foresee, the very consequence that fire would occur as a result of its failure to close ground level openings in the vacant building. Thus, the `probability' element was met." Adjoining owners' brief at 32-33 (emphasis added).
This Court recently stated the controlling legal principles in New Addition Club, Inc. v. Vaughn, 903 So.2d 68, 73 (Ala.2004):
"`[T]he existence of a duty is a question of law to be determined by the trial judge.' State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 839 (Ala.1998). `It is the general rule in Alabama that absent special relationships or circumstances, a person has no duty to protect *233 another from criminal acts of a third person.' Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1370 (Ala.1986).
"`"Special circumstances" arise when the defendant "knew or had reason to know of a probability of conduct by [a third person] that would endanger the plaintiff." Knowledge on the part of a premises owner or manager of a probability that harm will be caused to a person on the premises, by the action of third party, can create a duty on the part of the owner or manager to take reasonable precautions. However, while prior incidents of criminal conduct can indicate the premises owner or manager had notice that someone on the premises could be harmed by the criminal act of a third person, proof of prior criminal acts does not conclusively establish such notice.'
"Hail v. Regency Terrace Owners Ass'n, 782 So.2d 1271, 1274 (Ala.2000) (citations omitted).
"In Carroll v. Shoney's, Inc., 775 So.2d 753, 756 (Ala.2000), this Court clarified the requirements for imposing a duty upon a person for the criminal actions of another:
"`Alabama law requires a plaintiff to show three elements to establish a duty that would be the basis for a cause of action such as the one presented in this case.... First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed "specialized knowledge" of the criminal activity. Third, the criminal conduct must have been a probability.'
"(Footnote omitted.)"
(Emphasis added.)
Tenn Tom's argument focuses upon the adjoining owners' obligation to present substantial evidence indicating that Tenn Tom knew or had reason to know of a probability that a trespasser would intentionally set fire to the vacant building. Therefore, our analysis begins with a review of the evidence concerning the extent of Tenn Tom's knowledge of the risk of a fire in the building.
Tenn Tom employed Terry Harmon to inspect the building and to undertake to keep trespassers out of it. Harmon testified that, while trespassers had entered the building on numerous occasions, no prior trespasser had started a fire. Specifically, while being examined by Tenn Tom's counsel, Harmon testified:
"Q. And did you have a problem with people breaking into the building on a weekly basis?
"A. No, sir.
"Q. A monthly basis?
"A. About every two or three months, we'd have a problem with it. Sometimes three, four, five, six months would go by and we wouldn't have any problem.
"Q. Did you ever, in the 20 years you looked after that building, ever see anyplace in that building where somebody had started a fire?

"A. No, sir.

"Q. Sir?
"A. No, sir.
"Q. Did you ever find where some homeless person had tried to cook?
"A. No, sir.
"Q. Did you ever find where some person got in there and built a fire to try to stay warm?
"A. No, sir.
"Q. Now, this fire that destroyed the building took place in July, didn't it?
"A. Yes, sir.
"Q. And we know that it was intentionally set, correct?
"A. Yes, sir.

*234 "Q. Did the building have any utilities to it?
"A. No, sir.
"Q. From over 20 years of looking after this building, was there any fire activity in the building that would tell you there was a probability that somebody was going to start a fire in there?

"A. No, sir.

"Q. But you were concerned about somebody accidentally starting a fire, correct?
"A. Yes, sir. It being a wood structure, yes, sir."
(Emphasis added.)
In arguing that Tenn Tom was aware of the probability that a trespasser would intentionally start a fire, the adjoining owners call our attention to additional testimony from Harmon, elicited during cross-examination by counsel for the adjoining owners:
"Q. Would it be an accurate statement [to say that] the reason you were asked to go by and check on this building on a weekly basis was to keep trespassers out of the building?
"A. Yes.
"Q. And it didn't matter to you whether they were homeless people, drug addicts, teenagers, whoever?
"A. Right.
"Q. No one had any business in that building?
"A. Yes, sir.
"Q. And you, as well as your employer, knew that it was important to keep people out of the building, correct?
"A. Yes, sir.
"Q. And the reason why it was important [was] because you knew if people got in there, there was the possibility of a fire being started in that building, correct?
"A. Yes, sir.

"Q. And you knew if fire was started in that building, not only could it, obviously, damage [that building], it could also pose a danger to surrounding property owners, correct?
"A. Yes, sir.

"Q. And you had these concerns and [Tenn Tom] had these concerns about fire in the building prior to the actual fire in July of 2001, correct?
"A. Yes, sir.
"....
"Q.[Tenn Tom's counsel] asked you was questioning you and asked you if you were concerned about somebody accidentally setting a fire in that building.
"A. Yes, sir.
"Q. Now, isn't it true you were concerned about any fire starting in that building?
"A. Oh, yes, sir. It's a wood structure, yes, sir.
"Q. It didn't matter how it started or who started it or for what reason. Prior to the fire in July 2001, y'all were concerned about letting people in that building because you were concerned a fire could start and damage that building, correct?
"A. Yes, sir.
"Q. And also damage surrounding property owners?
"A. Yes, sir."
(Emphasis added.)
Neither party calls our attention to any other evidence concerning the extent of Tenn Tom's knowledge of the risk of a fire being intentionally set by a trespasser in the building. While Harmon's testimony established that Tenn Tom was aware of the possibility that a trespasser in the building might start a fire, his testimony was not sufficient to establish that Tenn *235 Tom knew or had reason to know of a probability that a trespasser would intentionally set fire to the building. Therefore, Tenn Tom owed the adjoining owners no duty to protect their property from the actions of any unknown arsonist.[1] Consequently, the trial court erred in denying Tenn Tom's motion for a JML. The judgment of the trial court is reversed, and the cause is remanded for the entry of an order consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, HARWOOD, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
LYONS, J., concurs specially.
LYONS, Justice (concurring specially).
This case is troublesome for two reasons. First, if the fire marshal had determined that the fire was started by carelessness, such as a trespassing vagrant's falling asleep with a lighted cigarette, instead of arson, I have the sense that we would not be insisting upon probabilities over possibilities in order to find foreseeability. Second, because fire is a hazard for which society regularly takes precautions, why should whether the fire originated from carelessness or by intent make any difference in determining foreseeability? Nevertheless, after careful consideration, I must resolve these questions adversely to the adjoining owners.
Turning to the first of the two concerns expressed above, the adjoining owners, citing Justice Johnstone's dissent in Carroll v. Shoney's, Inc., 775 So.2d 753, 758 (Ala. 2000), remind us that "[f]oreseeability is a matter of common sense." A court may take judicial notice of certain "facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence." Independent Life Ins. Co. v. Carroll, 222 Ala. 34, 37, 130 So. 402, 405 (1930). Accord, Kmart Corp. v. Bassett, 769 So.2d 282, 286 (Ala.2000). That mankind is significantly more likely to cause fires through carelessness than by deliberate acts of arson is a matter, I submit, within the common knowledge of every person of ordinary understanding and intelligence. Because of the greater likelihood that a fire will result from carelessness, as opposed to an intentional act, it does not offend common sense for this Court to require a heightened standard of proof of probability in order to find a property owner liable for the more unlikely circumstance of an intentional act of arson by a third party. Consequently, the fact that we might not be focusing on probability had this fire been caused by carelessness does not justify disregarding the requirement of showing probability in the context of a fire caused by the criminal act of a third party.
Because the evidence presented by the adjoining owners does not, as the main opinion points out, constitute proof of the probability of someone intentionally starting a fire in the building, there nevertheless remains the second concern expressed above. Should society's routine recognition of fire as a hazard justify disregard of whether the fire was intentionally or carelessly started, thereby eliminating the requirement of showing the probability that a fire would occur as opposed to a possibility? I resolve this question by first distinguishing between an allegation of breach of duty before the fact, i.e., the fire, and an allegation of breach of duty arising after the fact. Here, the adjoining owners' complaint is based upon conduct occurring entirely *236 before the factthe failure of Tenn Tom to prevent vagrants from entering the building. Had the adjoining owners' claim been grounded upon the inadequacy of steps taken by Tenn Tom to deal with the fire once it had started, whether the fire was caused through carelessness or intentional conduct becomes less significant.
These observations are a natural segue into a discussion of the cases from other jurisdictions relied upon by the adjoining owners, an exercise necessitated by the fact that only one Alabama case deals with the foreseeability of an arson committed by a third party. See Hail v. Regency Terrace Owners Ass'n, 782 So.2d 1271 (Ala.2000). The adjoining owners have cited cases from other jurisdictions in which "courts that have addressed this issue have rejected the argument that a defendant cannot be charged with liability under any circumstances for an arson fire, holding instead that each situation must be adjudged on the basis of foreseeability that the wrongful conduct would lead to the fire." Brief of adjoining owners at 33-36.
The adjoining owners first cite B & D Associates, Inc. v. Russell, 73 Conn.App. 66, 807 A.2d 1001 (2002); however, the fire made the basis of the action in that case was the second fire that had occurred. The adjoining owners also rely upon Ohio Fair Plan Underwriting Association v. Arcara, 65 Ohio App.2d 169, 176, 417 N.E.2d 115, 120 (1979), in which the court relied upon "the fact that the building was in a deteriorating neighborhood, that the building was vacant and vandalized, that one previous fire had occurred, and that the dwelling was considered a public nuisance by the city of Cleveland in that there were numerous violations of the Housing Code." (Emphasis added.) The adjoining owners also rely upon Ford v. Jeffries, 474 Pa. 588, 379 A.2d 111 (1977), but in that case a second fire was the basis of the action. The adjoining owners cite New York Central Mutual Fire Insurance Co. v. City of Albany, 247 A.D.2d 815, 817, 669 N.Y.S.2d 450, 452 (1998), but, according to the opinion, the defendant "admitted that she was aware of the neighborhood arson outbreak." No such evidence was presented in this case. As previously noted, and as the main opinion points out, there is no evidence of any prior fire in this building, either intentionally or carelessly set.
The adjoining owners cite City of New York v. Drizin, 295 A.D.2d 552, 553, 744 N.Y.S.2d 695, 696 (2002). However, that opinion contains no facts to support the court's summary conclusion that there was "a material issue of fact as to whether the arsonist's conduct was foreseeable." Consequently, it is not useful as precedent in this proceeding.
The adjoining owners also cite Addis v. Steele, 38 Mass.App.Ct. 433, 648 N.E.2d 773 (1995), an action by guests at an inn who were injured while escaping the inn after a fire had been set by an arsonist. The gravamen of the action was the defendant's failure to provide adequate lighting and a clear and obvious exit path. Of course, an actionable breach of these duties did not occur until after the fire had occurred. In this setting, the Appeals Court of Massachusetts observed, "Given the foreseeability of a fire at the inn, the corporation gains no benefit from the fact that the fire was set." 38 Mass.App.Ct. at 437, 648 N.E.2d at 776-77. Another case relied upon by the adjoining landowners, Mozer v. Semenza, 177 So.2d 880, 883 (Fla.Dist.Ct.App.1965), also contains the observation, "it is not important to the liability of the appellant whether the fire started in one way or another." But it too involves a claim against a hotel by a guest charging that the hotel was not reasonably safe with regard to the fire resistance and a dangerous unenclosed stairwell, matters *237 relating to allegation of an actionable breach occurring after the fire had started. As previously noted, the alleged actionable breach in this proceeding took place before the fire was set. Consequently, the insignificance of the cause of the fire as found in Addis v. Steele and Mozer v. Semenza does not apply to this proceeding.
Returning to Hail v. Regency Terrace Owners Association, the plaintiff in that case, Hail, was the administrator of the estate of a deceased condominium resident. The estate sued the condominium owners' association alleging wrongful death, claiming that, after a fire started by an arsonist, the elevator in the condominium building malfunctioned, causing it to open on a floor where smoke been detected, leading to Mr. Hail's suffocation. This Court, focusing on several prior acts of arson, the association's identification of two primary suspects, and the fact that the association had taken steps to protect residents from future fires, concluded that a jury question had been presented as to the issue of the foreseeability of the act of arson. Because the focus of the plaintiff's claim of wrongdoing related to the malfunctioning of the elevator, which occurred after the fire, perhaps the reversal of the trial court's judgment in Hail could also have been grounded upon the insignificance of causation of the fire, employing the rationale of Addis v. Steele and Mozer v. Semenza. Of course, that is a question we need not decide today.
NOTES
[1] See § 13A-7-42(a), Ala.Code 1975 ("[a] person commits the crime of arson in the second degree if he intentionally damages a building by starting or maintaining a fire").