[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10814

_____

APRIL PIPKINS,
individually, and as the Personal Representative
of the estate of Emantic Fitzgerald Bradford, Jr.,

Plaintiff-Appellant,

*versus*

CITY OF HOOVER, ALABAMA,
DAVID ALEXANDER,
JOHN DOE,
RIVERCHASE GALLERIA MALL,
BROOKFIELD ASSET MANAGEMENT, INC., et al.,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-01907-RDP

———————————————

Before JORDAN, NEWSOM, and BRASHER, Circuit Judges.

JORDAN, Circuit Judge.

> "In the mind of the police officer, the lawfully-carried gun can kill just as easily as the illegal one; it is never more than a moment away from doing so." Brandon de Pozo & Barry Friedman, *Policing in the Age of the Gun*, 98 N.Y.U. L. Rev. 1831, 1867 (2023).

On Thanksgiving night in 2018, David Alexander—a policeman with the City of Hoover—was on foot patrol with his partner in the Galleria Mall in Birmingham, Alabama. During a suspected active shooting situation, and within seconds after gunshots had been fired in the Mall, Officer Alexander saw Emantic "E.J." Fitzgerald Bradford moving towards two men (who appeared to be shooting victims) with a gun in his hand and at his side. Without issuing a verbal warning, Officer Alexander shot and killed Mr. Bradford when he was about ten feet away from the two men. It turns out that Mr. Bradford was legally authorized to carry his gun pursuant to a permit issued under Alabama law and was going towards the sound of the shots in an attempt to provide assistance.

## I

April Pipkins, the mother of Mr. Bradford and the representative of his estate, filed suit against Officer Alexander, the City of Hoover, Hoover Mall Ltd. (which owned the Galleria Mall), and Brookfield Asset Management (which operated the Galleria Mall). She asserted Fourth Amendment claims under 42 U.S.C. § 1983 and negligence and wantonness claims under Alabama law for her son's death.[1]

The district court dismissed the state law claims under Rule 12(b)(6) and granted summary judgment against Ms. Pipkins on the § 1983 claims. In part, the court ruled that Officer Alexander's use of deadly force was reasonable under the Fourth Amendment and that, under the circumstances, providing a verbal warning was not feasible.

This is Ms. Pipkins' appeal from the dismissal order and the summary judgment order. We begin with the § 1983 claims and then turn to the state law claims.

## II

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Our review of the district court's summary judgment order is plenary, and we

---

[1] We refer to Hoover Mall Ltd. and Brookfield Asset Management collectively as the "Mall defendants."

look at the evidence in the light most favorable to Ms. Pipkins, the non-movant. *See Butler v. Smith*, 85 F.4th 1102, 1111 (11th Cir. 2023).

## A

We summarized the facts at the beginning, but now set them out with more detail. In doing so we note that the record includes a video clip from a mall surveillance camera. The clip, which we have reviewed, depicts the shooting of Mr. Bradford and supports the version of events we provide. *See Scott v. Harris*, 550 U.S. 372, 379–81 (2007).

On Thanksgiving night in 2018, the Galleria Mall in Birmingham, Alabama, was crowded with holiday shoppers. As relevant here, two City of Hoover policemen, Officer Alexander and his partner, were assigned to foot patrol at the Mall that evening and were stationed on the second floor. They were wearing their uniforms.

At 9:51 p.m., Officer Alexander and his partner heard two gunshots and the screams of a woman. They drew their firearms and moved towards the sound of the gunshots, which was about 75 feet from their location. They saw a crowd of shoppers near a Foot Action store running away from the sound of the gunshots. They also observed two men near a railing who were not running

away. One of the men was clutching his stomach and appeared to be injured.[2]

Officer Alexander also noticed a man—Mr. Bradford—running in the direction of the two men while holding a gun in his hand and at his side. Though he was carrying a gun, Mr. Bradford was not in a "ready fire" position. But Mr. Bradford was between Officer Alexander and his partner and the two men near the railing, and would have reached them first. In other words, Officer Alexander was behind Mr. Bradford as they both moved towards the two men.

Approximately five seconds after hearing the initial gunshots, Officer Alexander shot and killed Mr. Bradford, mistakenly believing he was going to shoot the two men who were near the railing. Officer Alexander did not issue a verbal warning to Mr. Bradford before firing.

The video clip from the mall surveillance camera indicates that Officer Alexander discharged his weapon about two to three seconds after seeing Mr. Bradford running with a gun in his hand. At the time of the shooting, Mr. Bradford was about ten feet away from the two men, and Office Alexander was about ten feet behind Mr. Bradford.

---

[2] The man clutching his stomach, Brian Wilson, had been shot by Erron Brown.

As noted, Mr. Bradford was a Good Samaritan who was going toward the sound of gunshots and was legally authorized to carry his gun. Mr. Brown, who had fired the initial two shots at the Galleria Mall and injured Mr. Wilson, was charged with first-degree assault in February of 2021.

Nicholas Bloomfield, an expert for Ms. Pipkins, provided an opinion on the use of deadly force by Officer Alexander. As relevant here, he opined that Officer Alexander's failure to provide a verbal warning before shooting Mr. Bradford was "unreasonable, tactically unsound, and contrary to generally accepted police practices."

## B

The Fourth Amendment guarantees the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "[A]pprehension by the use of deadly force is a seizure[.]" *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

Officer Alexander's use of deadly force is reviewed under an "objective reasonableness" standard, which "requires a careful balancing of the nature and quality of the intrusion on [Mr. Bradford's] Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted). Reasonableness is assessed "from the perspective of a 'reasonable officer on

the scene.'" *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1229 (11th Cir. 2020) (quoting *Graham*, 490 U.S. at 396).[3]

"The operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" *Cnty. of L.A. v. Mendez*, 581 U.S. 420, 427–28 (2017) (quoting *Garner*, 471 U.S. at 8–9). Generally speaking, a law enforcement officer is permitted to use deadly force if he "(1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, (2) reasonably believes that the use of deadly force was necessary to prevent escape, and (3) has given some warning about the possible use of deadly force, if feasible." *Perez v. Suszcynski*, 908 F.3d 1213, 1218–19 (11th Cir. 2016) (internal quotation marks and citation omitted).

Ms. Pipkins asserts that the district court improperly granted summary judgment in favor of Officer Alexander because (1) he lacked probable cause to believe that Mr. Bradford presented a serious or deadly threat, and (2) there is a genuine dispute of material fact as to whether a verbal warning was feasible. Given the totality of the circumstances, we reject both arguments.

---

[3] At summary judgment, of course, any conflicts in the evidence are resolved in favor of Ms. Pipkins when deciding whether Officer Alexander's conduct violated the Fourth Amendment. *See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014).

As noted,

> [w]e analyze th[e] question [of Fourth Amendment reasonableness] from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." We thus "allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

*Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (citations omitted).

Here the suspected crime—the shooting of a patron at the Galleria Mall—was a serious one. Under the circumstances, and given the short amount of time available to him, Officer Alexander reasonably perceived Mr. Bradford to be the shooter and therefore a person who posed an immediate danger to others. To recap, Officer Alexander was in a crowded Galleria Mall, heard two gunshots, saw shoppers at the Foot Action store running away from the sound of the gunshots, and observed two men near a railing who were not running away (one of them clutching his stomach as if injured). While moving with his partner toward the sound of the gunshots, Officer Alexander saw Mr. Bradford running towards the two men with a gun in his hand and at his side. Mr. Bradford was between Officer Alexander and his partner and the two men, meaning that he (Mr. Bradford) would reach the two men before the policemen. Officer Alexander, with only seconds to react, then fatally shot Mr. Bradford when he was just ten feet away from the men. Only five seconds elapsed from the time of the first two gunshots

to the time that Officer Alexander discharged his weapon, and only about two to three seconds elapsed from the time Mr. Bradford came into Officer Alexander's line of sight to the fatal shots.

In our view, Officer Alexander was "'forced to make [a] split-second judgment[ ]'" as to whether Mr. Bradford posed a threat of serious physical harm to others. *See Kisela v. Hughes*, 584 U.S. 100, 103 (2018) (quoting *Graham*, 490 U.S. at 396–97). "Perspective . . . is crucial to the analysis, and the only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." *Tillis ex rel. Wuenschel v. Brown*, 12 F.4th 1291, 1299 (11th Cir. 2021) (internal quotation marks and citation omitted). To a reasonable officer under the circumstances, Mr. Bradford was not a "fleeing non-dangerous suspect in a non-violent crime," *Powell v. Snook*, 25 F.4th 912, 923 (11th Cir. 2022), or a Good Samaritan trying to render assistance, but rather an armed man in an enclosed crowded space, where gunshots had just been fired, moving toward two men, one of whom appeared injured. Officer Alexander, in other words, had probable cause to believe that Mr. Bradford was the shooter and a serious threat even though he was not in a "ready fire" position. *See District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (explaining that probable cause is satisfied when there is a "substantial chance of criminal activity") (internal quotation marks and citation omitted). Mr. Bradford was holding a gun in his hand and at his side, and "there was nothing to prevent him from shooting at the [two men] in an instant." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1169 (11th Cir. 2009).

As to the need for a prior warning, we "have declined to fashion an inflexible rule that, in order to avoid civil liability, an officer must always warn his suspect before firing—particularly where such a warning might easily have cost the officer his life." *Penley v. Eslinger*, 605 F.3d 843, 854 n.6 (11th Cir. 2010) (internal quotation marks and citations omitted). Nevertheless, sometimes the feasibility of providing a warning constitutes a disputed issue of fact that a factfinder must resolve. For example, in *Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003), where the officer drove next to a suspected stolen truck for 30 to 45 seconds, we held that a "reasonable jury could conclude that [he] had the time and opportunity to warn [the occupants of the truck] that he was planning to use deadly force before he opened fire." *Id.* at 1331. *See also Adams v. City of Cedar Rapids*, 74 F.4th 935, 940 (8th Cir. 2023) ("Whether Officer Trimble was able to forego the warning requirement because of a risk to his safety was a factual question in this case.").

But feasibility is not always a disputed issue of fact. Our decision in *Davis v. Waller*, 44 F.4th 1305 (11th Cir. 2022), is instructive in this regard. In that case, an armed fleeing felon who had shot his pregnant girlfriend hijacked a logging truck and kidnapped its driver, forcing him to drive the truck toward a number of police officers. The officers opened fire and shot the driver, who was the hijacking victim. The driver sued the officers who shot him under § 1983, alleging excessive force. We affirmed the grant of summary judgment in favor of the officers, holding that a warning was not feasible under the circumstances and therefore not constitutionally required: "Nor, on these facts, were the officers required first to

issue a warning before using lethal force . . . To require an officer to give a warning before firing a shot would have forced the officer to place himself in the immediate path of an oncoming 84,000-pound truck or the path of a potential bullet." *Id.* at 1315.

We conclude that, under the circumstances he faced, Officer Alexander did not have to issue a warning to Mr. Bradford. Stated differently, the lack of a warning did not make the use of deadly force excessive under the Fourth Amendment.

Officer Alexander testified at his deposition that it was physically possible to provide a warning in the span of a three-to-five second timeframe, but a warning was not feasible under the circumstances. The feasibility of a warning is dependent on many variables, two of which are the proximity of the danger to the officer or others and the time available to the officer. *See, e.g., Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015) (holding that an officer's use of deadly force was excessive because the suspect was "retreating, apparently unarmed, and outside of striking range"); *Robinson v. Arrugueta*, 415 F.3d 1252,1256 (11th Cir. 2005) (upholding the use of deadly force against a person who was driving a car towards the officer: "At the most, [Officer] Arrugueta had only 2.72 seconds to react to what he perceived as a threat of using physical harm from Walters."). *Accord* Seth W. Stoughton, Jeffrey J. Noble, and Geoffrey P. Alpert, Evaluating Police Uses of Force 159, 167 (2020) (explaining that "[t]ime is the single most important tactical concept in policing," and that "[g]enerally speaking, the distance

between the officer and the subject is inversely correlated with the threat of physical harm").

Here, both of these variables weigh against the feasibility of a warning. First, at the time Officer Alexander fired his weapon, Mr. Bradford was just ten feet away from the two men near the railing and was running in their direction with a gun ahead of Officer Alexander and his partner. Second, Officer Alexander had very little time to react; only five seconds elapsed from the sound of the first two gunshots to his use of deadly force, and only two to three seconds elapsed from the time Officer Alexander saw Mr. Bradford running with a gun towards the two men. Mr. Bradford was armed with a gun, and nothing prevented him from shooting at the two men (or anyone else) in an instant. *Cf. Swiford v. Santos*, 121 F.4th 179, 190 (11th Cir. 2024) ("The officers did not use deadly force until Thomas raised his gun in their direction. At that point it was not feasible for them to warn Thomas because they were forced to act. Given the circumstances and the split second that officers had to decide whether to fire their weapons, we find no error in the officers' failure to verbally warn Thomas that they would open fire.").

We have not overlooked the opinion of Mr. Bloomfield, Ms. Pipkins' use-of-force expert. In an excessive force case a qualified expert can testify about matters like the "prevailing standards in the field of law enforcement." *Samples v. City of Atlanta*, 916 F.2d 1548, 1551 (11th Cir. 1990). But in a summary judgment posture, "once we have determined the relevant set of facts and drawn all

inferences in favor of the nonmoving party to the extent supported by the record, . . . the reasonableness of [the officer's] actions . . . is a pure question of law." *Scott*, 550 U.S. at 381 n.8 (emphasis omitted). Mr. Bloomfield's opinion does not bind us on whether Officer Alexander's use of deadly force was constitutionally reasonable. *See Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) ("The Myers contend that a genuine issue of material fact barred a summary judgment because their expert testified that the force used by Evans was excessive, but whether the force that Evans used was excessive is a 'pure question of law.'") (citation omitted).

In sum, Officer Alexander did not violate the Fourth Amendment when he fatally shot Mr. Bradford. The shooting was, as the district court noted, undoubtedly tragic. But under governing precedent it was not unconstitutional.[4]

### III

Ms. Pipkins also challenges the district court's dismissal of her state-law claims (negligence/wantonness and negligent/wanton hiring, training, and supervision) against the Mall defendants. She argues that the Mall defendants (1) violated their duty of care

---

[4] Because there is no underlying constitutional violation, all of Ms. Pipkins' other § 1983 claims (e.g., the municipal liability claims) "fail[ ] as a matter of law." *Baker v. City of Madison*, 67 F.4th 1268, 1282 (11th Cir. 2023) (citing cases). And because his use of deadly force was reasonable under the Fourth Amendment, Officer Alexander is entitled to state-law immunity for the state-law claims against him. *See* Ala. Code §§ 6-5-338(a), 13A-3-23(d)(1); *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000).

to protect Mr. Bradford as a shopper and invitee at the Galleria Mall and (2) should have known that Officer Alexander and his partner were incompetent in their roles as mall security guards.

We review a Rule 12(b)(6) dismissal *de novo*. *See Colon v. Twitter, Inc.*, 14 F.4th 1213, 1217 (11th Cir. 2021). We accept the factual allegations in the operative complaint as true and view them in the light most favorable to Ms. Pipkins. *See Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014). The question is whether she has pled facts sufficient to make her state-law claims "substantive[ly] plausibl[e]." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).

In Count V of the operative complaint, Ms. Pipkins alleged on information and belief that Officer Alexander was hired by the Mall defendants (by way of a contract with the City of Hoover) to "provide security" at the Galleria Mall. *See* D.E. 46 at ¶¶ 75, 129. We accept this allegation to be true, as a plaintiff can plead in the alternative even if her claims are inconsistent. *See* Fed. R. Civ. P. 8(d)(2)–(3); *Adinolfe v. United Tech. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014). With respect to the state-law claims we therefore treat Officer Alexander as an off-duty policeman who was providing private security at the Galleria Mall.

## A

Ms. Pipkins alleged that the Mall defendants negligently and wantonly breached their duty to protect Mr. Bradford, who was an invitee at the Galleria Mall, from the unlawful conduct of Officer Alexander. *See* D.E. 46 at ¶ 130. According to the complaint, the

23-10814                Opinion of the Court                15

Mall defendants failed to, among other things, provide adequately trained security; screen tenants, guests, and invitees so that security would know who was lawfully carrying a weapon in the Galleria Mall; or implement or enforce rules as to who could possess weapons at the mall. The Mall defendants also allegedly failed to check Officer Alexander's training and background. *See id.* ¶¶ 132–33.

The district court dismissed Count V because the Mall defendants owed no duty to Mr. Bradford. It explained that under Alabama law there is no general duty to protect another from the criminal acts of a third person. *See* D.E. 59 at 7–9. We agree with the district court.[5]

**1**

Ms. Pipkins alleged in conclusory fashion that the Mall defendants "had a duty to protect patrons" at the Galleria Mall, including Mr. Bradford, from harm "inside the premises." D.E. 46 at ¶ 130. But under Alabama law the Mall defendants did not have a general duty to protect Mr. Bradford from the allegedly wrongful acts of Officer Alexander. In a number of premises liability cases, the Alabama Supreme Court has consistently held that, absent special relationships or circumstances, a business owner has no duty

---

[5] We recognize that under Alabama law negligence and wantonness are distinct torts, with wantonness requiring a higher mental state. *See T & J White, LLC v. Williams*, 375 So.3d 1225, 1230 (Ala. 2022); *Smith v. Davis*, 599 So.2d 586, 588 (Ala. 1992). But Ms. Pipkins has challenged the dismissal of Count V without distinguishing between the two torts. We therefore do not address negligence and wantonness separately with respect to Count V.

to protect an employee, patron, or invitee from the criminal acts of a third party. *See, e.g., Latham v. Aronov Realty Co.*, 435 So.2d 209, 212–14 (Ala. 1983); *Henley v. Pizitz Realty Co.*, 456 So.2d 272, 274–77 (Ala. 1984); *Saccuzzo v. Krystal Co.*, 646 So.2d 595, 596–97 (Ala. 1994); *Broadus v. Chevron USA, Inc.*, 677 So.2d 199, 202–04 (Ala. 1996); *Baptist Mem'l Hosp. v. Gosa*, 686 So.2d 1147, 1149–53 (Ala. 1996); *Carroll v. Shoney's Inc.*, 775 So.2d 753, 755–57 (Ala. 2000); *Ex parte Wild Wild West Soc. Club, Inc.*, 806 So.2d 1235, 1239–41 (Ala. 2001); *New Addition Club, Inc. v. Vaughn*, 903 So.2d 68, 73–76 (Ala. 2004).

"For the 'special relationship' exception to apply, there must be a relationship either between the premises owner and the third party or between the premises owner and the plaintiff." *Saccuzzo*, 646 So.2d at 596. Special circumstances exist only "where the 'particular criminal conduct was foreseeable," and the "number and frequency of prior criminal acts at the place where the injury occurred are used in determining whether a particular criminal act was reasonably foreseeable. . . . When the number and frequency of the crimes on the premises rises, and notice is shown on the part of the owner, then, and only then, would criminal activity become reasonably foreseeable." *Moye v. A.G. Gaston Motels, Inc.*, 499 So.2d 1368, 1317, 1372–73 (Ala. 1986) (citations omitted). The complaint contained no factual allegations suggesting special relationships or circumstances.

## 2

Alabama courts have recognized a special relationship in a few rare instances, such as where "the plaintiffs were completely dependent upon the defendants for protection." *Finley v. Patterson*, 705 So.2d 826, 828 (Ala. 1997). For example, in *Young v. Huntsville Hosp.*, 595 So.2d 1386, 1390 (Ala. 1992) (on rehearing), the Alabama Supreme Court held that a special relationship exists between a hospital and its sedated or anesthetized patient: "A hospital or health care provider owes a duty to a sedated or anesthetized patient, who, because of such condition and the circumstances surrounding it, is dependent upon the hospital or health care provider." Ms. Pipkins has not alleged that Mr. Bradford, who was lawfully armed while at the Galleria Mall, was wholly dependent on the Mall defendants for protection.

The district court correctly ruled that, under Alabama law, Mr. Bradford's mere status as an invitee did not create a special relationship with or duty on the part of the Mall defendants. Alabama courts have expressly held that there is no special relationship between a premises owner and its invitee. *See Broadus*, 677 So.2d at 204 ("Broadus also argues that he was a business invitee of Chevron and Larry Ayres d/b/a Regency Chevron and argues that a 'special relationship' existed between him and the defendants. As above noted, no special relationship was established by the facts of this case."); *Johnston v. Mr. Mini Mart No. 50*, 744 So.2d 922, 926 (Ala. Civ. App. 1999) ("As the trial court noted, there is no evidence in this case of any 'special relationship' between the parties. A special

relationship is not created by the fact that Mrs. Johnston and Sample were invitees at the Mini Mart store.").

**3**

In her brief, Ms. Pipkins argues that there were special circumstances because it was foreseeable to the Mall defendants that an untrained security officer would improperly respond to a person with a gun at the Galleria Mall and cause injuries to others. But Count V, which incorporated paragraphs 1–81 of the complaint, contains no allegations whatsoever about foreseeability or about any prior incidents of misconduct of any kind by either patrons or visitors of the Galleria Mall or security guards who worked there. Ms. Pipkins therefore has not plausibly pled foreseeability.

In Alabama foreseeability exists only when the owner of the premises "knew or had reason to know of a *probability* of conduct by [a third person] that would endanger the plaintiff." *Tenn Tom Bldg. v. Olen, Nicholas & Copeland, P.C.*, 908 So.2d 230, 233 (Ala. 2005) (internal quotation marks and citation omitted). "Alabama law requires a plaintiff to show three elements to establish a duty that would be the basis" for a claim like the one here: "First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed 'specialized knowledge' of the criminal activity. Third, the criminal conduct must have been a *probability*." *Id.* (internal quotation marks and citation omitted) (emphasis in original).

Under this demanding standard, notice of different illegal behavior at the premises, even if frequent, is insufficient. As we

understand Alabama law, there must be notice of the specific criminal conduct at issue. *See Henley*, 456 So.2d at 277 (holding that a parking garage owner's notice of one battery upon an owner of a car, six incidents of breaking and entering of cars, two robberies, and seven thefts over a ten year period was insufficient to give rise to a duty to protect a customer who was abducted from the parking deck and raped); *Ortell v. Spencer Companies, Inc.*, 477 So.2d 299, 300 (Ala. 1985) (holding that a convenience store owner's notice of five robberies, one assault with a weapon, one theft, and one burglary on the premises in a three-year period was not sufficient to impose a duty to protect a patron from a criminal's kidnapping and sexual assault); *Moye*, 499 So.2d at 1372 n.1 (holding that evidence of one murder and one robbery of a guest in a hotel room in the 18 months preceding the homicide of an invitee outside the hotel after a teen dance "would be insufficient as a matter of law to give rise to a duty to protect [the invitee]"); *Saccuzzo*, 646 So.2d at 596–97 (holding that although "[i]n the 18 months preceding the shooting of [the decedent], the police had been called to [the defendant's] restaurant more than 160 times," this "extremely high level of criminal activity at [the restaurant] . . . could not impute knowledge to [the defendant] of the probability of a criminal attack on [the decedent]," particularly given that "[t]here had been no other shootings in the 18 months").

Under Alabama law, "[t]he bare chance that [a Good Samaritan] might be attacked by a security guard is not sufficient to impose liability[.]" *Wild Wild West Soc. Club,* 806 So.2d at 1241. Given that Count V does not mention foreseeability, and is bare of any

allegations of past criminal activity (regardless of type) at the Galleria Mall, Ms. Pipkins has not made out a plausible claim of special circumstances.

**B**

The district court also dismissed Count VI, in which Ms. Pipkins alleged that the Mall defendants were negligent and wanton in hiring, training, and supervising Officer Alexander as a security guard. *See* D.E. 46 at ¶ 143. The district court reasoned that the complaint "failed to allege any prior incompetence by [Officer] Alexander, much less that the [Mall defendants] were aware of [his] alleged incompetence." D.E. 59 at 11.

Ms. Pipkins argues that she included allegations concerning "a host of training and policy deficiencies that resulted in the [Galleria Mall's] security personnel being collectively incompetent." Appellant's Br. at 31. Again, we agree with the district court.

To state a claim for negligent hiring, training, and supervision, Ms. Pipkins had to sufficiently plead that "(1) the [Mall defendants] hired, trained, or supervised an employee [Officer Alexander] with an incompetency; (2) the [Mall defendants] knew of the incompetency or would have learned of it by exercising due care; and (3) the employee [Officer Alexander] caused [Mr. Bradford] harm due to the incompetency." *Motley v. Express Services*, 386 So.3d 766, 772–73 (Ala. 2023). "A mistake or single act of negligence on the part of an employee does not establish incompetency[.]" *Southland*

*Bank v. A & A Drywall Supply Co., Inc.*, 21 So.3d 1196, 1216 (Ala. 2008).[6]

Like Count V, Count VI incorporated the allegations set out in paragraphs 1–81 of the complaint. The problem is that those paragraphs do not come close to alleging that Officer Alexander was incompetent when hired (or retained) as a security guard.

Officer Alexander was a policeman with the City of Hoover, and the complaint alleges that law enforcement officials in Alabama are taught that (a) citizens may lawfully possess concealed handguns in the state with a permit, (b) citizens are lawfully permitted to use deadly force to protect themselves and others from serious injury or death, and (c) first responders and Good Samaritans usually move toward victims to assist them. *See* D.E. 46 at ¶¶ 54–55, 59. They are also taught to give clear verbal warnings and/or commands to de-escalate and control possibly dangerous situations. *See id.* ¶ 62. If Officer Alexander received all of this training, it is difficult to see how the complaint plausibly alleged that he—the employee who shot Mr. Bradford—was incompetent or that the Mall defendants knew (or should have known) of the incompetency.

---

[6] With respect to wantonness, Ms. Pipkins had to sufficiently plead that "the [Mall defendants] wantonly disregard[ed] [Officer Alexander's] incompetence[.]" *Armstrong Bus. Services, Inc. v. AmSouth Bank*, 817 So.2d 665, 682 (Ala. 2001). As with Count V, Ms. Pipkins has presented a single argument in favor of reversal on Count VI and does not discuss negligence and wantonness separately.

The complaint does allege, without any specifics, that the Mall defendants "permitted [an] untrained [Officer] Alexander to work as security without adequately checking his training and background which in turn allowed [him] to shoot a first responder and Good Samaritan," i.e., Mr. Bradford. *See id.* ¶ 80.i. But it is silent on what a more searching background check and investigation would have revealed about Officer Alexander's purported incompetency. As a result, the negligent/wanton hiring and retention claim in Count VI is not plausible. *See Lane v. Cent. Bank of Ala., N.A.*, 425 So.2d 1098, 1100 (Ala. 1983) ("'Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.'") (citation omitted).

## IV

Christopher Fry, the English playwright, remarked that "[i]n tragedy every moment is eternity[.]" *Comedy*, 4 Tulane Drama Review 77, 77 (March 1960). Those words are both an accurate comment about the human condition and a poignant truth about those who have to bear the weight of calamity. But they do not negate the undeniable reality that, as here, tragedy can strike in an instant.

In an effort to prevent harm to others, Officer Alexander shot and killed Mr. Bradford, whom he mistakenly thought was the shooter at the Galleria Mall. That use of deadly force, within seconds of the initial gunshots, unfortunately and tragically took the life of a Good Samaritan who was trying to render assistance.

Given the circumstances, however, Officer Alexander acted reasonably and did not violate the Fourth Amendment. The operative complaint, moreover, did not state plausible claims against the Mall defendants under Alabama law. The district court's dismissal and summary judgment orders are affirmed.

**AFFIRMED.**